GARY ANDERSON SMITH, Plaintiff v. BRIAN O'NEAL HARRIS and NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC., Defendant

No. COA06-688

(Filed 6 February 2007)

**Insurance— underinsured motorist—highway patrol trooper— injured while chasing fleeing suspect on foot**

The causal connection between a highway patrol trooper's broken ankle incurred while chasing defendant across a field on foot following a traffic stop and the use of defendant's underinsured vehicle is too tenuous to invoke the underinsured motorist coverage issued to the trooper.

Appeal by defendant from orders entered 31 May 2005 and 3 April 2005 by Judges J. Richard Parker and Cy Anthony Grant, Sr., respectively, in Pasquotank County Superior Court. Heard in the Court of Appeals 14 December 2006.

*Teague & Glover, P.A., by Danny Glover, Jr., for plaintiff-appellee.*

*Baker, Jones, Daly & Carter, P.A., by Ronald G. Baker, for defendant-appellant.*

JACKSON, Judge.

On 23 April 2002, Gary Anderson Smith ("plaintiff"), an employee of the North Carolina Highway Patrol, was on patrol on U.S. 17 in Pasquotank County, North Carolina. Plaintiff observed Brian Harris ("Harris") driving and not wearing a seatbelt. Plaintiff stopped the vehicle and asked Harris for his driver's license and registration. Harris produced the materials, and plaintiff returned to his patrol car to check the status of Harris' driving privilege. After learning that Harris' driving privilege had been suspended, plaintiff returned to Harris' vehicle and asked Harris to get into the passenger side of the patrol car. Plaintiff then got into the driver's side of the vehicle and informed Harris that he was under arrest for driving while his license was suspended. Plaintiff opened his door and began to get out of the car in order to go to the passenger side to handcuff Harris. As soon as plaintiff exited the vehicle, however, so did Harris, and Harris began running away across a field. Plaintiff gave chase, but after running approximately forty to sixty yards and almost catching up with

Harris, plaintiff stepped either in a hole or on uneven ground, causing his foot to roll and his ankle to break.

Plaintiff had personal automobile insurance issued to him by North Carolina Farm Bureau Mutual Insurance Company ("defendant"), with effective dates of 14 December 2001 to 14 June 2002. The policy contained underinsured motorist coverage with coverage limits of $100,000.00 per person. Harris had automobile liability insurance with Progressive Insurance Company ("Progressive"), with coverage limits of $30,000.00 per person. Progressive paid plaintiff the applicable liability policy limit on Harris' policy in exchange for a Covenant Not to Enforce Judgment. Plaintiff then made a claim under his underinsured motorist coverage with defendant, which defendant denied.

Plaintiff brought a personal injury action against Harris and defendant, and the complaint, including a motion to compel arbitration, was filed on 16 December 2004. On 16 February 2005, defendant filed an answer denying that there was underinsured motorist coverage applicable to plaintiff's claim and asserting a counterclaim for a declaratory judgment determining that there was no such coverage. Progressive already had paid its policy limit to plaintiff, and no responsive pleadings were filed on Harris' behalf. Default thus was entered against Harris on 23 March 2005. On 27 April 2005, plaintiff filed a motion for partial summary judgment on the issue of whether plaintiff was entitled to underinsured motorist coverage pursuant to defendant's automobile liability insurance policy issued to plaintiff. Defendant, in turn, filed a motion for summary judgment on 28 April 2005. On 31 May 2005, the trial court granted plaintiff's motion for partial summary judgment as well as plaintiff's motion to compel arbitration.

On 24 March 2006, plaintiff and defendant arbitrated their dispute, and the arbitrators determined that plaintiff was entitled to recover $75,000.00. On that same date, plaintiff filed a motion requesting the trial court to confirm the arbitration award and to include in its judgment plaintiff's costs. On 3 April 2006, the trial court filed an order confirming the arbitration award and decreeing that plaintiff was entitled to recover from defendant $75,000.00, reduced by the $30,000.00 Progressive had paid to plaintiff. Thus, the court ordered defendant to pay plaintiff $45,000.00 plus interest, as well as the costs incurred by plaintiff. Defendant filed timely notice of appeal.

In its first argument, defendant contends that the trial court erred in denying its motion for summary judgment and in allowing the plaintiff's motion for partial summary judgment. We agree.

"On appeal from summary judgment, the applicable standard of review is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Taylor v. Coats*, 180 N.C. App. 210, 212, 636 S.E.2d 581, 583 (2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). If there is any evidence of a genuine issue of material fact, a motion for summary judgment should be denied. *See Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 471, 597 S.E.2d 674, 694 (2004). "[W]e review the record in a light most favorable to the party against whom the order has been entered to determine whether there exists a genuine issue as to any material fact." *BellSouth Telecomms., Inc. v. City of Laurinburg*, 168 N.C. App. 75, 80, 606 S.E.2d 721, 724, *disc. rev. denied*, 359 N.C. 629, 615 S.E.2d 660 (2005).

Plaintiff's personal automobile insurance policy included underinsured motorists coverage. Under this portion of the policy, defendant contracted to "pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured caused by an accident." The policy further provided that "[t]he owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle." Defendant argued before the trial court and contends on appeal that plaintiff's injury—specifically, his broken ankle—did not "arise out of the ownership, maintenance or use" of Harris' vehicle. The trial court disagreed with defendant, and "[o]ur review of the trial court's construction of the provisions of an insurance policy is *de novo*." *Smith v. Stover*, 179 N.C. App. 843, 845, 635 S.E.2d 501, 502 (2006) (citing *Bruton v. N.C. Farm Bureau Mut. Ins. Co.*, 127 N.C. App. 496, 498, 490 S.E.2d 600, 601-02 (1997)).

The central issue in the case *sub judice* is whether plaintiff's injury arose out of the ownership, maintenance, or use of Harris' vehicle. This Court has held that

[i]n order for an injury to be compensable, there must be a causal connection between the use of the vehicle and the injury. This connection is shown if the injury is the *natural and reasonable consequence of the vehicle's use.* However, an injury is not a "natural and reasonable consequence of the use" of the vehicle if the injury is the result of something *"wholly disassociated from, independent of, and remote from"* the vehicle's normal use.

*Scales v. State Farm Mut. Auto. Ins. Co.*, 119 N.C. App. 787, 790, 460 S.E.2d 201, 203 (1995) (emphases added) (quoting *Reliance Ins. Co. v. Walker*, 33 N.C. App. 15, 22, 234 S.E.2d 206, 210-11 (1977)). "In the context of the interpretation of policies of insurance, this Court has adopted the ordinary meaning of the word 'use'; that is, to put into action or service, to carry out a purpose or action by means of, or to make instrumental to an end or process." *Dutch v. Harleysville Mut. Ins. Co.*, 139 N.C. App. 602, 607, 534 S.E.2d 262, 265 (2000) (internal quotation marks, citations, and alterations omitted).

In *Smith v. Stover*, 179 N.C. App. 843, 635 S.E.2d 501 (2006), this Court was presented with a set of circumstances similar to those in the case *sub judice*. In *Stover*, the plaintiff—a deputy sheriff—observed the defendant run a red light. *Id.* at 844 635 S.E.2d at 502.

Plaintiff pursued defendant until defendant's vehicle became stuck in a creek. Plaintiff stopped his vehicle. Defendant fired with a shotgun at plaintiff from his car, breaking the windshield but not injuring him. Plaintiff then exited his vehicle. Defendant exited his vehicle and ran into nearby woods. Defendant fired several times at plaintiff from the woods, striking and injuring plaintiff.

*Id.* The plaintiff subsequently filed a personal injury action against the defendant. *Id.* The plaintiff was covered by his employer's uninsured motorist coverage, and defendant's vehicle was uninsured. *Id.* The trial court in *Stover* determined that the plaintiff's injuries were covered by his uninsured motorist coverage. *Id.* This Court, however, reversed the decision of the trial court, noting that it is not enough that the injuries occurred "but for the use of the automobile." *Id.* at 846, 635 S.E.2d at 503 (quoting *Nationwide Mut. Ins. Co. v. Knight*, 34 N.C. App. 96, 100, 237 S.E.2d 341, 345 (1977)). In other words, it was not enough that the "[p]laintiff, being a law enforcement officer, attempted to stop the [uninsured] vehicle to enforce the laws of the

State of North Carolina as they apply to motor vehicles" and that the plaintiff was injured during the course of the encounter. *Id.* This Court clarified that

> if plaintiff had been injured in a motor vehicle collision that occurred in the course of the chase of defendant, the uninsured motorist coverage . . . would have been applicable. However, there was no connection between the ownership, maintenance, or use of the uninsured motor vehicle and defendant's intentional shooting of plaintiff.

*Id.* (citation omitted).

Much as in *Stover*, plaintiff's injury in the instant case was the result of something "wholly disassociated from, independent of, and remote from the vehicle's *normal use.*" *Scales*, 119 N.C. App. at 790, 460 S.E.2d at 203 (emphasis added) (internal quotation marks and citation omitted). *Stover* is clear that the requisite causation for uninsured or underinsured motorist coverage is not triggered solely by the fact that a plaintiff is injured while attempting to enforce our state's motor vehicle laws. Here, the causal connection between plaintiff's broken ankle and the use of defendant's underinsured vehicle is too tenuous to invoke the underinsured motorist coverage issued to plaintiff by defendant. As such, we cannot agree that plaintiff's injury was "the natural and reasonable consequence" of the vehicle's use. *See id.*

Accordingly, we hold the trial court erred in finding that coverage existed under the underinsured motorist coverage portion of plaintiff's insurance policy with defendant. As a result, we need not address defendant's remaining assignment of error.

Reversed.

Judges CALABRIA and GEER concur.