SECHIA ROWELL, Plaintiff v. JACK BOWLING, JR., M.D. AND NEW HANOVER
REGIONAL MEDICAL CENTER, INC., Defendants

No. COA08-1352

(Filed 7 July 2009)

**1. Appeal and Error— preservation of issues—failure to cite authority—Rule 2**

The Court of Appeals exercised its authority under N.C. R. App. P. 2 to address plaintiff's argument in a medical malpractice case even though plaintiff failed to include authority in her brief in support of her argument as required by N.C. R. App. P. 28(b), thus subjecting the argument to dismissal.

**2. Medical Malpractice— Rule 9(j) certification—res ipsa loquitor**

The trial court did not err in a medical malpractice case by granting summary judgment in favor of defendant doctor because: (1) plaintiff's pleading was void of any specific assertion that the medical care was reviewed by an expert who would testify that the medical care failed to comply with the applicable standard of care, and thus the pleading did not meet the heightened pleading requirements of N.C.G.S. § 1A-1, Rule 9(j)(1) or (2); and (2) contrary to plaintiff's assertion, the doctrine of *res ipsa loquitor* was inapplicable since plaintiff offered direct proof of the cause of the skin incisions made to her left knee and complained that such incisions caused her pain and damages.

Judge JACKSON dissenting.

Appeal by plaintiff from judgment granted 31 July 2008 and entered 5 August 2008 by Judge W. Allen Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 7 April 2009.

*Bruce Robinson for plaintiff appellant.*

*Walker, Allen, Grice, Ammons & Foy, L.L.P., by Jerry A. Allen, Jr. and O. Drew Grice, Jr., for defendant appellee.*

HUNTER, JR., Robert N., Judge.

In this action for medical malpractice, plaintiff alleged that she sustained injuries as a result of medical care provided by Dr. Jack Bowling, Jr. Because plaintiff did not allege that her complaint had

been reviewed by a qualified expert witness prior to filing suit, and because we hold her complaint did not allege facts sufficient to invoke the doctrine of *res ipsa loquitor*, we affirm the trial court's grant of summary judgment to Dr. Bowling.

On 24 July 2003, Sechia Rowell ("plaintiff") saw Dr. Bowling regarding an injury to her right knee, which occurred when she mis-stepped at her work on 22 July 2003. An MRI from 8 August 2003 showed symptoms, which Dr. Bowling explained as being "consistent with acute chondromalacia." Dr. Bowling prescribed conservative management treatment, but after those measures failed, he recommended a right knee arthroscopy.

On 25 November 2003, hospital staff positioned, prepped, and draped plaintiff's *left* knee for surgery, which was the wrong knee, though Dr. Bowling was not present during these preparations. Dr. Bowling then made two "puncture wounds or incisions" in the left knee. Dr. Bowling testified that two minutes after the start of the procedure, a nurse anesthetist called to his attention the fact that he had the wrong knee; he "aborted" the process; and the two, four-to-five millimeter puncture holes, which did not enter the actual knee joint or compartment, were sutured with one suture each and sterilely dressed. Dr. Bowling then performed an arthroscopy on the *right* knee.

Dr. Bowling first saw plaintiff for postoperative care on 1 December 2003. Plaintiff testified that Dr. Bowling did not explain why surgery was started on the left knee, that he did not tell her specifically that he did or did not do surgery on the left knee, and that he just told her "he went into the wrong knee." She further testified that post-operatively she had fluid on both knees. On 4 December 2003, Dr. Bowling's office notes indicated plaintiff's left knee still had some swelling over the left portal site and that her left knee was "improved."

During continued post-operative care, Dr. Bowling prescribed physical therapy for plaintiff's right knee. On 7 January 2004, plaintiff complained of pain in her right hip. By 21 January 2004, the pain had progressed to her lower back. On 5 February 2004, Dr. Bowling noted that the incisions had healed well, neither knee had "effusion" (seeping) or "ecchymosis" (bruising), and her strength was graded as "normal." Her primary complaint at that visit was her right hip.

To obtain a second opinion regarding continued complaints of right knee pain and right hip pain, as well as left knee pain, plaintiff

saw Wilmington orthopedic surgeon Dr. David Esposito on 18 March 2004. Dr. Esposito performed a second arthroscopic surgery on plaintiff's right knee on 17 June 2004. Plaintiff continued to experience bilateral knee pain and right hip pain. She was then referred to Dr. John Liguori, a Wilmington physical medicine and rehabilitation specialist, for care and pain management.

On 13 July 2006, plaintiff filed a medical malpractice action against Dr. Bowling and New Hanover Regional Medical Center (collectively, "defendants"). Plaintiff's complaint, in pertinent part, alleged defendants were negligent as follows:

10. The operative report states that, "the left lower extremity was mistakenly prepped and draped in standard fashion. Two skin puncture sites were made and at this point it was noted by the operating room staff that the incorrect limb had been prepped and draped and an incision had been made on the left lower extremity."

. . . .

12. The conduct of the defendants in operating on the left knee was negligence in and of itself pursuant to Rule 9(j) not requiring certification of negligence of an expert witness. Defendants admit that they operated on the incorrect leg before they began to operate on the correct leg.

13. Before the operation, plaintiff never had any difficulty at all with her left knee or leg. Following the operation negligently performed by the defendants, the plaintiff has had constant pain, permanent injury, disfigurement, and future possible medical expenses associated with the incorrect, negligent, incision to her left knee.

. . . .

16. As a proximate cause of the negligence of the defendants as stated in this complaint, defendants are justly indebted to the plaintiff in excess of ten thousand ($10,000.00) dollars for pain and suffering, permanent injuries, scaring [sic] and disfigurement, medical expenses, future medical expenses, lost future wages, and other damages as will be shown at trial.

Dr. Bowling answered and denied the alleged negligence and damages. On 2 June 2008, after conducting the depositions of the parties and several treating physicians, Dr. Bowling filed a motion for

summary judgment, which was heard on 7 July 2008. On 21 July 2008, plaintiff voluntarily dismissed her complaint against the hospital. Dr. Bowling's motion for summary judgment was granted on 5 August 2008. Plaintiff appeals.

## I.  Issue

On appeal, plaintiff argues it was error for the trial court to grant Dr. Bowling's motion for summary judgment. Plaintiff specifically argues in her brief that there are genuine issues of material fact as to the "damage that was done by an incision, admitted liability, and whether [] the conduct of [Dr. Bowling] constituted the performance of an operation[.]"

## II.  Standard of Review

A grant of summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). An appellate court's standard of review of a trial court's grant of a motion for summary judgment is whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Smith v. Harris*, 181 N.C. App. 585, 587, 640 S.E.2d 436, 438 (2007). "An appeal from an order granting summary judgment raises only the issues of whether, on the face of the record, there is any genuine issue of material fact, and whether the prevailing party is entitled to judgment as a matter of law." *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 353, 595 S.E.2d 835, 778, 782 (2004). We review a trial court's ruling on summary judgment de novo. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Our review of a complaint for medical malpractice is further discussed *infra*.

## III.  Analysis

[1] We note as a preliminary matter that plaintiff includes no authority in her brief in support of her argument, which constitutes a violation of Rule 28(b) of the North Carolina Rules of Appellate Procedure and subjects the argument to dismissal. *Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 195 N.C. App. 348, 358, 673 S.E.2d 667, 674 (2009); *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008). Despite this violation of our appellate rules, we choose to further address plaintiff's argument pursuant to the authority granted us by

ROWELL v. BOWLING

[197 N.C. App. 691 (2009)]

Rule 2 of the North Carolina Rules of Appellate Procedure. *See Dogwood*, 362 N.C. at 198, 657 S.E.2d at 365-66.

**[2]** N.C. R. Civ. P. 9(j) provides, in pertinent part:

Any complaint alleging medical malpractice by a health care provider as defined in G.S. 90-21.11 in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:

(1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;

(2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or

(3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitor.

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2007). "[T]his rule does not provide a procedural mechanism by which a defendant may file a motion to dismiss a plaintiff's complaint." *Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. ——, ——, ——, S.E.2d ——, —— (2009). In *Barringer*, this Court established the following principles regarding the review of medical malpractice action compliance:

Rule 9(j) unambiguously requires a trial court to dismiss a complaint if the complaint's allegations do not facially comply with the rule's heightened pleading requirements. Additionally, this Court has determined "that even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal is likewise appropriate." In considering whether a plaintiff's Rule 9(j) statement is supported by the facts, "a court must consider the facts relevant to Rule 9(j) and apply the law to them. In such a case, this Court does not "inquire as to whether there was any question of ma-

terial fact," nor do we "view the evidence in the light most favorable" to the plaintiff. Rather, " 'our review of Rule 9(j) compliance is de novo, because such compliance clearly presents a question of law . . . .' "

*Id.* at ——, —— S.E.2d —— (citations omitted); *see* N.C. Gen. Stat. § 1A-1, Rule 9(j) (2007).

In the instant case, plaintiff's pleading is void of any specific assertion that the medical care was reviewed by an expert who would testify that the medical care failed to comply with the applicable standard of care; thus, the pleading does not meet the heightened pleading requirements of Rule 9(j)(1) or (2). Plaintiff asserts in her complaint that "[t]he conduct of the defendants in operating on the left knee was negligence in and of itself pursuant to Rule 9(j) not requiring certification of negligence by an expert witness." Accordingly, we consider de novo whether her complaint alleges facts establishing negligence under the doctrine of *res ipsa loquitor* pursuant to Rule 9(j)(3). *See Barringer*, 197 N.C. App. at ——, —— S.E.2d at ——.

This Court has determined that in medical malpractice cases, the doctrine of *res ipsa loquitor* should be "restrictive[ly]" applied, because the " 'average juror [is] unfit to determine whether [a] plaintiff's injury would rarely occur in the absence of negligence[.]' " *Howie v. Walsh*, 168 N.C. App. 694, 698, 609 S.E.2d 249, 251 (2005) (citation omitted). Medical malpractice cases typically require expert testimony because "(1) most medical treatment involves inherent risks despite adherence to the appropriate standard of care and (2) [of] 'the scientific and technical nature of medical treatment.' " *Id.* (citation omitted). Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 56, at 185-86 (6th ed. 2004) further explains this concept: "Although various explanations have been given for the inapplicability of *res ipsa* in medical malpractice cases, this one is the most plausible. Normally, in such actions, both the standard of care and its breach must be established by expert testimony."

Previously, this Court has held that the doctrine of *res ipsa loquitor* applies in " 'situations where the facts or circumstances accompanying an injury by their very nature raise a presumption of negligence on the part of [a] defendant.' " *Howie*, 168 N.C. App. at 698, 609 S.E.2d at 251 (citation omitted). It is appropriate to use the doctrine " 'when no proof of the cause of an injury is available, the instrument involved in the injury is in the exclusive control of [a]

defendant, and the injury is of a type that would not normally occur in the absence of negligence.' " *Id.*

We first consider whether the first element of the doctrine was met in this case; that is, whether there was any direct proof of the cause of injury available to plaintiff. *See Yorke v. Novant Health, Inc.*, 192 N.C. 340, 351-52, 666 S.E.2d 127, 136 (2008). In *Yorke*, for example, the plaintiff offered direct proof of the cause of his injury during his trial testimony; specifically, he consistently identified through testimony a blood pressure cuff as the cause of his injury to his arm. *Id.* This Court stated that "[w]hen a plaintiff offers direct evidence of the negligence that led to his injury, the doctrine of *res ipsa loquitor* is inapplicable." *Id.* Conversely, in *Parks v. Perry*, a doctor performed a hysterectomy on the plaintiff while she was under general anesthesia. *Parks v. Perry*, 68 N.C. App. 202, 204, 314 S.E.2d 287, 290, *disc. review denied*, 311 N.C. 761, 321 S.E.2d 142, 143 (1984). Upon awakening, she experienced numbness and weakness in her fingers, which was later identified as damage to the ulnar nerve in her right arm. *Id.* On these facts, this Court held that the plaintiff had satisfied the first element for invoking the doctrine of *res ipsa loquitor*. *Id.* at 207, 314 S.E.2d at 290.

In the instant case, plaintiff neither pled that there is no direct proof of her injury nor did she make such an argument in her brief. In fact, her complaint points to the "[t]wo skin puncture sites" made by Dr. Bowling "on the left lower extremity" as the causation of her "constant pain, permanent injury, [and] disfigurement." Similarly, her argument in her brief focuses on the "damage that was done by an incision." Moreover, plaintiff's own testimony focuses on the skin incisions made to the left knee as the source of her pain. Her own testimony is sufficient to identify the cause of her injury. *See Yorke*, —— N.C. at ——, 666 S.E.2d at 136. Plaintiff offered direct proof of the cause of the skin incisions made to her left knee and complained that such incisions caused her pain and damages. Under these facts, we hold that the doctrine of *res ipsa loquitor* was not applicable. Accordingly, plaintiff failed to sufficiently plead her action for medical malpractice, and her assignments of error are overruled.

## IV. Conclusion

Plaintiff's complaint for a medical malpractice action failed to meet the heightened pleading requirements of N.C. Gen. Stat. § 1A-1, Rule 9(j), in that it did not include the assertion that the medical care provided by Dr. Bowling was reviewed by an expert who would testify that the medical care failed to comply with the applicable stand-

ard of care, and it did not satisfactorily invoke the doctrine of *res ipsa loquitor*. The trial court's grant of summary judgment to Dr. Bowling is, therefore,

Affirmed.

Judge WYNN concurs.

Judge JACKSON dissents with separate opinion.

JACKSON, Judge, dissenting.

I must respectfully dissent from the majority's decision to invoke Rule 2 to reach the merits of plaintiff's appeal. For the reasons stated below, I would dismiss.

Rule 28 of the North Carolina Rules of Appellate Procedure requires an appellant to include in the body of his argument "citations of the authorities upon which the appellant relies." N.C. R. App. P. 28(b)(6) (2007). "The function of all briefs . . . is to define clearly the questions presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. Review is limited to questions so presented in the several briefs." N.C. R. App. P. 28(a) (2007). "Assignments of error . . . in support of which no . . . authority [is] cited, will be taken as abandoned." N.C. R. App. P. 28(b)(6) (2007).

Plaintiff devotes a single page to her sole argument on appeal. That argument is devoid of any supporting legal authority whatsoever. Therefore, as noted in the majority opinion, plaintiff's argument is subject to dismissal. However, rather than dismissing the argument, the majority addresses it under the auspices of Rule 2.

Pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, the appellate courts may excuse a party's appellate rules violations when necessary to "prevent manifest injustice to a party" or to "expedite decision in the public interest." N.C. R. App. P. 2 (2007). However, Rule 2 is to be invoked "cautiously." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008). In *Dogwood,* our Supreme Court reaffirmed "prior cases as to the 'exceptional circumstances' which allow the appellate courts to take this 'extraordinary step.' *Id.* (citing *State v. Hart,* 361 N.C. 309, 315-17, 644 S.E.2d 201, 205-06 (2007); *Steingress v. Steingress,* 350 N.C. 64, 66, 511 S.E.2d 298, 299-300 (1999)).

I do not believe this case presents an "exceptional circumstance" warranting the "extraordinary step" of invoking Rule 2. No "manifest injustice to a party" will be prevented by invoking Rule 2; no "decision in the public interest" will be expedited. Accordingly, I would dismiss the appeal.