McGEE, Chief Judge.
 

 *162
 
 I.
 
 Facts
 

 The events relevant to this appeal occurred on 28 June 2009. On that date, Roddie McKinley Lopp ("Roddie") lived with his parents, Mary Lopp and Frederick Samuel Lopp ("Frederick") (Frederick together with Roddie, "Plaintiffs") in Louisburg. Roddie had two young children ("the children"), whose mother was Jodie Braddy ("Jodie"). Roddie and Jodie never married, and Jodie subsequently married Doug Braddy ("Doug"). On 28 June 2009, Roddie and Jodie shared custody of the children under the terms of a custody order. Pursuant to this custody order, Roddie was to deliver the children to Jodie by 6:00 p.m. on 28 June 2009. Deviation from established transfer times could only be made by the "mutual consent" of Roddie and Jodie. Roddie contends his attorney spoke with Jodie's attorney prior to 28 June 2009, and an agreement was reached whereby Roddie would keep the children past 28 June 2009 to make up for times when Jodie had kept the children during Roddie's custodial periods. The record includes nothing beyond Roddie's testimony and affidavit supporting the existence of this agreement.
 

 *163
 
 According to Jodie, after Roddie failed to appear by 6:00 p.m. on 28 June 2009, Jodie decided to drive to the Louisburg Police Department for assistance in retrieving the children. Jodie brought the custody order with her, which she showed to police officers. Jodi asked for assistance from the officers because she was worried that Roddie "could possibly get violent because [she and Roddie] had had such a physical history." Jodie also informed the officers that Roddie kept firearms in his house. After speaking with the on-duty magistrate, an officer informed Jodie that the Louisburg police would assist her.
 

 Officers Garrett Stanly
 
 [1]
 
 ("Officer Stanly"), Andy Castaneda ("Officer Castaneda"), and Sherri Brinkley ("Officer Brinkley") were in the parking lot of the police station preparing to leave for Plaintiffs' house when Deputy Joel Anderson ("Deputy Anderson") of the Franklin County Sheriff's Department (Deputy Anderson, along with the above three officers "Defendant Officers"), passed by and agreed to join them. Defendant Officers headed to Plaintiffs' house, and Jodie and Doug followed in their own automobile.
 

 The following is Roddie's account of the events that occurred at his home on 28 June 2009. Defendant Officers approached Roddie in his yard and "proceeded to confront him and insisted upon the return of the children to Jodi[e.]" Roddie told Defendant Officers that he wanted to call his attorney so his attorney could explain that an agreement had been reached allowing Roddie to keep the children for some extra period of time. According to Roddie's deposition testimony, he told Defendant Officers: " 'Well, I'm going to go in and call ... my attorney and then get a copy of the consent order and show you.' " Roddie testified: "There was [sic] no words after that. All four of them took me down, beat me, kicked me, assaulted me." Roddie testified that he had done nothing to provoke Defendant Officers, and that all four Defendant Officers "assaulted" him. Roddie testified that all four Defendant Officers punched and kicked him as he was lying on the ground and already handcuffed. Roddie further testified that he believed Deputy Anderson attempted to shock him with a stun gun as Roddie was "getting into the [police] car[,]" even though he was not resisting. According to Roddie, Deputy Anderson placed his stun gun on him, and he felt a small "jolt," but "not like what
 
 *164
 
 I'm used to seeing on TV[.]" Roddie believed the stun gun didn't "work[ ] completely right."
 

 Concerning the treatment of Frederick, Roddie testified that, after he had been
 
 *774
 
 helped off the ground, he "looked back and [Frederick] was down" on the ground. Roddie testified that Officer Stanly and Deputy Anderson "were roughing [Frederick] up and cuffing him." Roddie further testified that by "roughing up" he meant Officer Stanly and Deputy Anderson were punching Frederick in the face and upper body. In an affidavit, Roddie stated:
 

 [A]s I was led away and taken to the police vehicle I saw my father, Frederick Lopp, who was then 83 years of age, thrown to the ground and assaulted in much the same manner as me, and he [had] to be taken to the hospital later that same night.
 

 In his verified complaint, Frederick alleged that when he "saw his son ... being wrongfully harmed and assaulted by" Defendant Officers, he asked Defendant Officers if they had a warrant and told Defendant Officers they had no right to be there. Frederick then walked toward Roddie and Defendant Officers, "but [Frederick] was thereafter thrown to the ground by [Defendant Officers]" and "beaten, handcuffed and generally assaulted[.]" Defendants have included in the record testimony and affidavits contradicting Plaintiffs' recitation of the events.
 

 Plaintiffs filed complaints on 22 April 2014 alleging assault and battery, false imprisonment, and malicious prosecution against Defendant Officers, in both their official and individual capacities; and against Defendants Franklin County, the Town of Louisburg, the Louisburg Police Department, and Jerry Jones, as Sheriff of Franklin County, in both his official and individual capacity. By consent order entered 1 June 2015, Jerry Jones was dismissed as a Defendant in this matter, and Kent Winstead was substituted as a Defendant for Jerry Jones, solely in his official capacity as Sheriff of Franklin County. Defendants moved for summary judgment by motions filed 14 September 2015 and 16 September 2015.
 

 Defendants argued that Defendant Officers, acting in their individual capacities, were entitled to public official immunity; and that the municipal Defendants, along with the individual Defendants acting in their official capacities, were protected from suit by governmental immunity. The trial court granted summary judgment in favor of all Defendants by orders entered 3 November 2015. Plaintiffs appeal.
 

 *165
 
 II.
 
 Analysis
 

 In Plaintiffs' sole arguments on appeal they contend that the trial court erred in allowing Defendants' motions for summary judgment "based upon issues of sovereign immunity and public officer immunity." We agree in part and disagree in part.
 

 "Our standard of review of a trial court's order granting or denying summary judgment is
 
 de novo.
 
 Under a
 
 de novo
 
 review, the [C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 Bryson v. Coastal Plain League, LLC
 
 ,
 
 221 N.C.App. 654
 
 , 656,
 
 729 S.E.2d 107
 
 , 109 (2012) (citations and quotation marks omitted).
 

 "On appeal from summary judgment, the applicable standard of review is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." If there is any evidence of a genuine issue of material fact, a motion for summary judgment should be denied. "[W]e review the record in a light most favorable to the party against whom the order has been entered to determine whether there exists a genuine issue as to any material fact."
 

 Smith v. Harris
 
 ,
 
 181 N.C.App. 585
 
 , 587,
 
 640 S.E.2d 436
 
 , 438 (2007) (citations omitted). However, this Court will only consider those arguments properly set forth in an appellant's brief.
 
 Bryson
 
 ,
 
 221 N.C.App. at 655
 
 ,
 
 729 S.E.2d at 108
 
 .
 

 A.
 
 Sovereign Immunity
 

 The trial court granted summary judgment in favor of the municipal Defendants and the individual Defendants in their official capacities based upon sovereign immunity. The trial
 
 *775
 
 court based its orders granting summary judgment on the following:
 
 [2]
 

 *166
 
 1. Defendants Joel Anderson, Sheriff Kent Winstead, Garrett Stanley, Andy Castaneda, and Sherri a/k/a Shari Brinkley, in their official capacities, by reason of sovereign and/or governmental immunity, because there was no liability insurance providing indemnity coverage because the only policy of insurance for Franklin County and the only policy of insurance for the Town of Louisburg for the time in question did not provide liability coverage for the alleged actions of Defendants Anderson, Winstead, Stanley, Castaneda, and Brinkley against Plaintiff.
 

 2. Franklin County and the Town of Louisburg are entitled to sovereign and/or governmental immunity because the only policy of insurance for Franklin County and the only policy of insurance for the Town of Louisburg for the time in question preserves sovereign and/or governmental immunity for Plaintiff's claims, and, additionally, under North Carolina Law, a county may not be liable for the acts or omissions of a sheriff or his deputies.
 

 3. Defendants Joel Anderson, Garrett Stanley, Andy Castaneda, and Sherri a/k/a Shari Brinkley, in their individual capacities, are entitled to public officer immunity in that said defendants did not act with malice, were not corrupt, and were not acting outside of or beyond the scope of their duties. Furthermore, Defendants Stanley, Castaneda, and Brinkley conducted the arrest of Plaintiff based on probable cause for acts committed in their presence which would induce a reasonable police officer to arrest Plaintiff. Additionally, because there was probable cause for the arrest of Plaintiff, none of the Plaintiff's North Carolina State Constitutional Rights have been violated as Defendants Anderson, Stanley, Castaneda, and Brinkley used the minimum amount of force necessary to safely arrest Plaintiff.
 

 4. Defendant Louisburg Police Department is not a public entity that can be sued.
 

 Concerning the issue of sovereign immunity, Plaintiffs make identical arguments. Their entire arguments are as follows:
 

 The Defendants have all asserted governmental immunity, and contend that they are entitled to immunity unless it is waived through the purchase of insurance. It is clear
 
 *167
 
 that both Franklin County and the City of Louisburg had acquired insurance, but the Defendants all contend that the acquisition of this insurance purportedly did not waive as a defense the defense of governmental immunity, and therefore the County and City are still entitled to that defense. That is absurd, in that it is a fallacy and contrary to public policy. Why would you purchase insurance which had a provision in it that it would allow the County to not waive governmental immunity as a defense? If that is the case, the County and City are spending money for feckless reasons.
 

 Plaintiffs' arguments consist of declaratory statements unsupported by any citation to authority. Plaintiffs do not discuss the provisions of the insurance policies and, subsequently, Plaintiffs also fail to make any argument concerning the specific provisions of the policies that they contend served to waive sovereign immunity. Plaintiffs further fail to cite to any authority in support of any contention that the relevant insurance policies served to waive sovereign immunity. Plaintiffs' arguments violate Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure, and these arguments are therefore abandoned.
 
 McKinnon v. CV Indus., Inc.
 
 ,
 
 228 N.C.App. 190
 
 , 196,
 
 745 S.E.2d 343
 
 , 348 (2013) (citation omitted) ("Although plaintiff makes a passing reference to these statutes in his brief, he makes no specific argument that the trial court erred in denying his motion for attorney's fees under them. We therefore deem these issues abandoned. N.C.R. App. P. 28(b)(6) ('Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.')");
 
 N.C. Farm Bureau Mut. Ins. Co. v. Smith
 
 ,
 
 227 N.C.App. 288
 
 , 292,
 
 743 S.E.2d 647
 
 , 649 (2013) ("[Appellant]
 

 *776
 
 fail[s] to cite any controlling authority in support of this contention or otherwise explain why it has merit, and we accordingly deem the issue abandoned.
 
 See
 
 N.C.R. App. P. 28(b)(6) (2013) (providing that an appellant's argument 'shall contain citations of the authorities upon which the appellant relies').").
 

 Because Plaintiffs fail to properly argue that relevant insurance policies served to waive sovereign immunity with respect to Defendants Franklin County, Town of Louisburg, Louisburg Police Department, or Defendants Joel Anderson, Garrett Stanly, Andy Castaneda, Sherri Brinkley, and Kent Winstead, acting in their official capacities, any such arguments are abandoned.
 
 McKinnon
 
 ,
 
 228 N.C.App. at 196
 
 ,
 
 745 S.E.2d at 348
 
 . We affirm the grant of summary judgment in favor of the municipal Defendants, and the individual Defendants in their official capacities.
 

 *168
 
 Because Plaintiffs agreed, by consent order, to pursue Defendant Kent Winstead in his official capacity only, no claims remain against Defendant Kent Winstead.
 

 B.
 
 Additional Abandoned Arguments
 

 Further, Plaintiffs do not argue on appeal that Franklin County can be held liable for the acts of its elected Sheriff or his deputies, so any such arguments are also abandoned.
 
 Id
 
 . In addition, Plaintiffs make no arguments in their briefs concerning Defendant Louisburg Police Department. Plaintiffs have therefore abandoned any arguments that the trial court erred in granting summary judgment in favor of Defendant Louisburg Police Department.
 
 Id
 
 .
 

 C.
 
 Public Official Immunity
 

 Plaintiffs also contend the trial court erred in granting summary judgment in favor of Defendant Officers Garrett Stanly, Andy Castaneda, Sherri Brinkley, and Joel Anderson, in their individual capacities.
 

 Defendants contend that, because the individual Defendants were public officials conducting their public duties, their actions were protected by public official immunity. Police officers engaged in performing their duties are public officials for the purposes of public official immunity: "a police officer is a public official who enjoys absolute immunity from personal liability for discretionary acts done without corruption or malice."
 
 Campbell v. Anderson
 
 ,
 
 156 N.C.App. 371
 
 , 376,
 
 576 S.E.2d 726
 
 , 730 (2003) (citations omitted).
 

 The North Carolina rule is that a public official engaged in the performance of governmental duties involving the exercise of judgment and discretion may not be held liable unless it is alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties.
 

 Showalter v. N.C. Dep't of Crime Control & Pub. Safety
 
 ,
 
 183 N.C.App. 132
 
 , 136,
 
 643 S.E.2d 649
 
 , 652 (2007) (citation omitted). Plaintiffs have specifically alleged that Defendant Officers acted with malice.
 

 "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." As the moving party, defendants had "the burden of showing that no material issues of fact
 
 *169
 
 exist, such as by demonstrating through discovery that the opposing party cannot produce evidence to support an essential element of his claim or defense."
 

 Id.
 

 (citations omitted).
 

 1.
 
 Roddie McKinley Lopp
 

 As discussed in greater detail above, Roddie testified and averred that all four Defendant Officers participated in taking him to the ground and punching and kicking him even though he was not resisting. Roddie further testified he was treated in that manner simply because he stated he was going to call his attorney to help clear up a misunderstanding about the custody agreement and his right to keep the children on 28 June 2009. There are multiple accounts from other witnesses who contradict Roddie's description of the events surrounding his arrest, but we must view the evidence in the light most favorable to Plaintiffs, since they are the non-moving parties.
 
 Smith
 
 ,
 
 181 N.C.App. at 587
 
 ,
 
 640 S.E.2d at 438
 
 . This Court previously addressed a similar fact situation in
 
 Showalter
 
 , where this Court held that denial of the police officer defendant, Trooper Emmons',
 
 *777
 
 motion for summary judgment was proper based upon the following evidence:
 

 In support of their motion for summary judgment, defendants offered the deposition testimony of plaintiff and his wife, and the affidavit of Trooper Emmons. Although Trooper Emmons averred in his affidavit that he did not act maliciously or with reckless indifference toward plaintiff, and that all of his actions were "based on probable cause," plaintiff testified in his deposition that the officer was angry, was "very loud and spitting," and that when he opened his car door in response to the officer's command, Trooper Emmons "maced" him, with some of the spray going inside plaintiff's car and contacting his wife. Plaintiff also testified that he told the officer that he needed his crutches, but the officer jerked him out of the car and handcuffed him, notwithstanding plaintiff's wife telling the trooper that plaintiff was disabled. The court must consider the evidence "in a light most favorable to the nonmoving party," and "[a]ll inferences of fact must be drawn against the movant and in favor of the nonmovant." When so considered, the foregoing evidentiary materials are sufficient to create a genuine issue of fact, material
 
 *170
 
 to the issue of immunity, as to whether Trooper Emmons actions were done with malice.
 

 Showalter
 
 ,
 
 183 N.C.App. at 136
 
 ,
 
 643 S.E.2d at 652
 
 (citations omitted).
 

 In the present case, Roddie's deposition testimony was as follows: Defendant Officers came to his home and informed him that they were going to take his children from him and arrest him. Roddie tried to explain that his attorney and Jodie's attorney had reached an agreement whereby Roddie would keep the children for a few days beyond 28 June 2009, to make up for extra time Jodie had kept the children in the past. Defendant Officers were not interested in listening to Roddie, so Roddie said he was going to go inside and call his attorney so his attorney could explain the situation to Defendant Officers. At that moment, according to Roddie: "They took me down and assaulted me." Roddie testified that all four Defendant Officers "took him down" and then punched and kicked him in front of his children. Roddie was handcuffed and placed in the back of a police vehicle. Roddie testified that a stun gun was deployed for no reason while Defendant Officers were attempting to place him in the vehicle, but he did not think the stun gun functioned properly.
 

 Although there is both affidavit and deposition testimony challenging Roddie's recitation of events, we must look at the evidence in the light most favorable to Roddie, as the non-moving party. We hold that, similar to the facts in
 
 Showalter
 
 , the record evidence raises an issue of material fact concerning whether Defendant Officers acted with malice.
 
 See also
 

 Thompson v. Town of Dallas
 
 ,
 
 142 N.C.App. 651
 
 , 656-57,
 
 543 S.E.2d 901
 
 , 905-06 (2001) (unnecessarily rough treatment of the plaintiff by defendant officer, as forecast in the plaintiff's complaint, sufficient to survive summary judgment even though defendant forecast evidence to the contrary). Therefore, relevant to Roddie's complaint, it was error for the trial court to grant Defendants' motion for summary judgment in favor of Defendant Officers, acting in their individual capacities, based upon public official immunity.
 
 [3]
 

 *171
 
 2.
 
 Frederick Samuel Lopp
 

 Defendants tried to depose Frederick on two occasions-15 January 2015 and 8 September 2015. Unfortunately, Frederick, who turned eighty-nine years old on 26 June 2015, was unable to answer coherently the questions asked of him on either occasion. Therefore, the only evidence in support of Frederick's claims consists of his verified complaint, and the deposition testimony and affidavit of Roddie.
 

 *778
 
 Although Frederick could not participate in his attempted depositions, Frederick's verified complaint alleges that he was "thrown to the ground[,]" then "beaten, handcuffed and generally assaulted[.]" Frederick's complaint alleges that he suffered "severe injuries" including "lacerations to his face, head, back, knees, legs and wrists" that required medical attention. Further, Roddie's testimony and affidavit include testimony that Roddie witnessed Frederick being assaulted by Deputy Anderson and Officer Stanly and, more specifically, that these two officers were punching Frederick in the head and upper body as he was subdued on the ground.
 

 For the same reasons discussed above concerning Roddie, we hold that, because there is a material conflict in the evidence asserted by Plaintiffs and Defendants, summary judgment in favor of Deputy Anderson and Officer Stanly based upon public official immunity relating to Frederick's complaint, was error. We further hold, however, that Frederick failed to present the trial court sufficient facts to support a finding of malice on the part of Officers Brinkley and Castaneda. Roddie's deposition testimony only implicated Deputy Anderson and Officer Stanly in the alleged mistreatment of Frederick, and Frederick was unable to give any testimony at all. We affirm the trial court's grant of summary judgment in favor of Officers Brinkley and Castaneda, in their individual capacities, based upon public official immunity, for Frederick's claims.
 

 D.
 
 Specific Individual Capacity Claims
 

 We must now consider whether summary judgment should have been granted in favor of the individual Defendants for any of the specific claims Plaintiffs filed against them.
 
 Shore v. Brown
 
 ,
 
 324 N.C. 427
 
 , 428,
 
 378 S.E.2d 778
 
 , 779 (1989) (citation omitted) ("If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered."). We reiterate that none
 
 *172
 
 of the following analysis applies to Officers Castaneda or Brinkley for Frederick's individual capacity claims because, as held above, they were protected by public official immunity from Frederick's individual capacity claims.
 

 1.
 
 Assault and Battery
 

 A law enforcement officer may be held liable for assault and battery in the course of an arrest if he or she uses excessive force in the course of that arrest.
 

 [A] civil action for damages for assault and battery is available at common law against one who, for the accomplishment of a legitimate purpose, such as justifiable arrest, uses force which is excessive under the given circumstances.
 

 Under the common law, a law enforcement officer has the right, in making an arrest and securing control of an offender, to use only such force as may be reasonably necessary to overcome any resistance and properly discharge his duties. "[H]e may not act maliciously in the wanton abuse of his authority or use unnecessary and excessive force." Although the officer has discretion, within reasonable limits, to judge the degree of force required under the circumstances, "when there is substantial evidence of unusual force, it is for the jury to decide whether the officer acted as a reasonable and prudent person or whether he acted arbitrarily and maliciously." Further, an assault and battery need not necessarily be perpetuated with maliciousness, willfulness or wantonness, and actual physical injury need not be shown in order to recover.
 

 Myrick v. Cooley
 
 ,
 
 91 N.C.App. 209
 
 , 215,
 
 371 S.E.2d 492
 
 , 496 (1988) (citations omitted). There are questions of material fact concerning whether Defendant Officers used excessive force, such as punching or kicking Plaintiffs, or deploying a stun gun, while facilitating the arrest of Plaintiffs. The trial court erred in granting summary judgment in favor of all Defendant Officers in their individual capacities for Roddie's assault and battery claims, and further erred in granting summary judgment in favor of Deputy Anderson and Officer Stanly in their individual capacities for Frederick's assault and battery claims.
 

 *779
 
 2.
 
 False Imprisonment
 

 Defendant Officers did not have a warrant to arrest Plaintiffs and, according to Defendants' evidence, they were not intending to arrest
 
 *173
 
 Plaintiffs when they arrived at Plaintiffs' residence. Defendants' evidence suggests that Roddie "aggressively initiated contact with the [individual Defendants.]" However, Roddie's evidence, if believed, suggests that immediately after Roddie indicated that he wanted to call his attorney in order to clear up the custody issue, Defendant Officers "surrounded [Roddie], threw him to the ground, handcuffed him, [and] arrested him[.]" Roddie claims he did not initiate contact with Defendant Officers. Roddie further claims that he was beaten by Defendant Officers. Frederick, in his verified complaint, contended that, when he saw Defendant Officers assaulting Roddie, he "asked the said Defendants if they had a warrant and stated they had no right to be at said premises without a warrant." "Thereupon [Frederick] turned to walk toward the location within his yard where all of said persons were located, but [Frederick] was thereafter thrown to the ground by the individual Defendants[,]" and then "assaulted."
 

 False imprisonment is the illegal restraint of a person against his will. A restraint is illegal if not lawful or consented to. A false arrest is an arrest without legal authority and is one means of committing a false imprisonment. The existence of legal justification for a deprivation of liberty is determined in accordance with the law of arrest, which is set forth in Chapter 15A of the General Statutes.
 

 N.C.G.S. § 15A-401(b)(1) (Cum. Supp. 1994) provides that an officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed a criminal offense in the officer's presence. A warrantless arrest without probable cause is unlawful. Thus, the dispositive issue is whether defendant had probable cause to believe that plaintiffs had committed assaults upon him.
 

 The existence or nonexistence of probable cause is a mixed question of law and fact. If the facts are admitted or established, it is a question of law for the court. However, if the facts are in dispute, the question of probable cause is one of fact for the jury. In this case, the material facts surrounding the incident are in dispute, and therefore the existence or nonexistence of probable cause is for the jury to determine. Accordingly, defendant was not entitled to summary judgment on this ground.
 

 Marlowe v. Piner
 
 ,
 
 119 N.C.App. 125
 
 , 129,
 
 458 S.E.2d 220
 
 , 223 (1995) (citations omitted). As in
 
 Marlowe
 
 , in the present case the facts are
 
 *174
 
 in dispute concerning probable cause to arrest Plaintiffs on 28 June 2009. The trial court erred in granting summary judgment in favor of all Defendant Officers in their individual capacities for Roddie's false imprisonment claims, and further erred in granting summary judgment in favor of Deputy Anderson and Officer Stanly in their individual capacities for Frederick's false imprisonment claims.
 

 3.
 
 Malicious Prosecution
 

 As this Court explained in
 
 Moore v. Evans
 
 ,
 
 124 N.C.App. 35
 
 ,
 
 476 S.E.2d 415
 
 (1996) :
 

 In order to maintain an action for malicious prosecution, the plaintiff must demonstrate that the defendant "(1) instituted, procured or participated in the criminal proceeding against [the] plaintiff; (2) without probable cause; (3) with malice; and (4) the prior proceeding terminated in favor of [the] plaintiff." "[M]alice can be inferred from the want of probable cause alone." As it is undisputed that defendant Evans initiated the criminal prosecution against Mr. Moore and that the prosecution ended with a dismissal of the charges against him, the only issue as to Mr. Moore's claim for malicious prosecution is whether defendant Evans had probable cause to initiate the criminal prosecution against him. Hence, a common element of each of the state claims alleged (false imprisonment and malicious prosecution) is the absence of probable cause.
 

 The test for whether probable cause exists is an objective one-whether the facts and circumstances, known at the time, were such as to induce a
 
 reasonable
 
 police officer to arrest, imprison, and/or prosecute
 
 *780
 
 another. In
 
 Pitts
 
 , our Supreme Court stated:
 

 The existence or nonexistence of probable cause is a mixed question of law and fact. If the facts are admitted or established it is a question of law for the court. Conversely, when the facts are in dispute the question of probable cause is one of fact for the jury.
 

 Id
 
 . at 42-43,
 
 476 S.E.2d at 421-22
 
 (citations omitted). Defendants do not dispute that the criminal proceedings were subsequently terminated in Plaintiffs' favor. We hold there is sufficient evidence to survive summary judgment on the fourth element of malicious prosecution.
 

 *175
 
 Concerning the first element, Officers Stanly, Castaneda, and Brinkley do not dispute that they were involved in instituting the criminal proceedings. Deputy Anderson argues that he did not "institute" the criminal proceedings because neither he nor the Franklin County Sheriff's Office brought charges against Plaintiffs. However, it is not necessary that an individual be directly involved in charging a person, or filing civil claims against that person, in order to have participated sufficiently in "institut[ing], procur[ing] or participat[ing] in the criminal proceeding against [the] plaintiff[.]"
 
 Id
 
 . at 42,
 
 476 S.E.2d at 421
 
 . "[W]here 'it is unlikely there would have been a criminal prosecution of [a] plaintiff' except for the efforts of a defendant, this Court has held a genuine issue of fact existed and the jury should consider the facts comprising the first element of malicious prosecution."
 
 Becker v. Pierce
 
 ,
 
 168 N.C.App. 671
 
 , 675,
 
 608 S.E.2d 825
 
 , 829 (2005) (citation omitted). Because Deputy Anderson is identified by Plaintiffs as having participated in the subduing and arrests of both Roddie and Frederick, we hold there is sufficient evidence to survive summary judgment that Deputy Anderson instituted, procured or participated in the criminal charges brought against Plaintiffs.
 

 Concerning the third element-probable cause:
 

 Our Supreme Court has defined probable cause with respect to malicious prosecution as:
 

 "the existence of such facts and circumstances, known to [the defendant] at the time, as would induce a reasonable man to commence a prosecution." Whether probable cause exists is a mixed question of law and fact, but where the facts are admitted or established, the existence of probable cause is a question of law for the court.
 

 The test for determining probable cause is " 'whether a man of ordinary prudence and intelligence under the circumstances would have known that the charge had no reasonable foundation.' "
 

 Id.
 
 at 677,
 
 608 S.E.2d at 829-30
 
 (citations omitted). When we take the evidence in the light most favorable to Plaintiffs, as we must,
 
 Smith
 
 ,
 
 181 N.C.App. at 587
 
 ,
 
 640 S.E.2d at 438
 
 , we hold there is sufficient evidence, as set out above, for a trier of fact to determine that the charges against Plaintiffs "had no reasonable foundation."
 
 Becker
 
 ,
 
 168 N.C.App. at 677
 
 ,
 
 608 S.E.2d at 830
 
 .
 

 *176
 
 Concerning the second element, Defendants argue there was insufficient evidence of malice to survive summary judgment. " 'Malice' in a malicious prosecution claim may be shown by offering evidence that defendant 'was motivated by personal spite and a desire for revenge' or that defendant acted with 'reckless and wanton disregard' for plaintiffs' rights."
 
 Id
 
 . at 676,
 
 608 S.E.2d at 829
 
 (citations and quotation marks omitted). If Plaintiffs' allegations are taken as true, Defendant Officers' actions could be found to have been done with " 'reckless and wanton disregard' for plaintiffs' rights."
 

 Id.
 

 We hold there was sufficient evidence, when viewed in the light most favorable to Plaintiffs, to survive Defendants' motions for summary judgment on the individual capacity claims of assault and battery, false imprisonment, and malicious prosecution against all Defendant Officers in Roddie's action, and against Officer Stanly and Deputy Anderson in Frederick's action. We stress that our holdings should not be taken as the opinion of this Court concerning the relative strength of Plaintiffs' evidence as compared to the evidence supporting Defendant Officers. We simply hold that Plaintiffs have sufficiently forecast evidence creating issues
 
 *781
 
 of material fact, which must be decided by the trier of fact. We remand for further action on Plaintiffs' individual capacity claims against Defendant Officers, excepting Frederick's individual capacity claims against Officers Castaneda and Brinkley, which were properly disposed of on summary judgment.
 

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 

 Judges STROUD and INMAN concur.
 

 [1]
 

 Although his name is written as "Garrett Stanley" on the complaint, orders granting summary judgment, and on notices of appeal, in his affidavit Officer Stanly struck out the spelling of "Stanley," and hand-wrote "Stanly," underneath his signature. We will use the spelling "Stanly" throughout the body of this opinion.
 

 [2]
 

 The orders granting summary judgment in Roddie's case and Frederick's case are identical in every relevant way, though there are some minor wording differences.
 

 [3]
 

 We also note that much of Roddie's argument in his brief before this court focuses on his contention that the officers had no legal authority to assist Jodie in retrieving the children according to the custody order, so the officers were acting "outside of and beyond the scope of [their] duties" simply by entering his property to assist Jodie in retrieving the children. The forecast of evidence does not show that the officers were acting outside or beyond the scope of their duties simply by assisting Jodie according to an existing custody order; it shows only that the officers may have used inappropriate force in dealing with Roddie and Frederick.