STATE OF NORTH CAROLINA v. WAYNE CARROUTHERS

No. COA09-31

(Filed 20 October 2009)

**Search and Seizure— search after handcuffing—standard for determining arrest**

The trial court erred by granting a motion to suppress the discovery of crack cocaine seized after defendant was placed in handcuffs. The trial court applied the incorrect standard to determine whether defendant was under arrest; the question is whether special circumstances existed justifying the use of hand-

cuffs as the least intrusive means necessary to carry out the purpose of the stop rather than whether a reasonable person would have felt free to leave after he was handcuffed.

Appeal by the State of North Carolina from order entered 25 September 2008 by Judge Yvonne Mims Evans in Superior Court, Mecklenburg County. Heard in the Court of Appeals 19 August 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Charles E. Reece, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Benjamin Dowling-Sendor, for Defendant-Appellee.*

McGEE, Judge.

Wayne Carrouthers (Defendant) was arrested on 14 September 2007 and charged with the sale of cocaine and resisting a public officer. Defendant was later indicted for possession of cocaine with intent to sell or deliver and being an habitual felon in addition to the above. The later indictments also arose from the 14 September 2007 encounter of Defendant and law enforcement agents. Defendant filed a pre-trial motion on 29 August 2008 to suppress evidence obtained by a police officer during the encounter leading to his arrest. The trial court held a hearing on Defendant's pre-trial motion to suppress and entered an order on 25 September 2008.

At the suppression hearing, Agent Robert Huneycutt (Agent Huneycutt) of the North Carolina Alcohol Law Enforcement agency testified that he was conducting a routine surveillance for alcohol and drug offenses in the parking lot of a convenience store in Charlotte, North Carolina on 14 September 2007. He testified he had previously conducted such surveillance at the convenience store and that his surveillance had led to "numerous charges [for] . . . [a]lcohol and narcotics" offenses.

Agent Huneycutt testified that shortly after he pulled into the convenience store parking lot, another vehicle pulled in and parked next to him at a distance of no more than twenty feet. There were two females in the front seat of the vehicle, being the driver and a passenger. In addition to the two females, there was a male passenger (later identified as Defendant) in the back seat. Agent Huneycutt had had no prior contact with Defendant. From his parked car, Agent Huneycutt observed an interaction between Defendant and two

unidentified men standing on the sidewalk. Agent Huneycutt saw Defendant lean out of the rear window of the vehicle and speak with the two unidentified men. One of the men approached Defendant and Defendant opened the rear door of the vehicle.

Agent Huneycutt testified he observed the unidentified man kneel down and hold his hand out with his palm up. Defendant then reached to his left side, withdrew something, and held the object in front of him. Defendant placed something in the man's open hand three times. Because Agent Huneycutt's vision was obstructed, he was unable to identify what Defendant put in the man's hand. However, Agent Huneycutt testified that the actions he observed were "consistent with drug activity or a hand-to-hand drug transaction." The unidentified man then stood, closed his hand into a fist, and walked away.

Agent Huneycutt approached Defendant, who was then standing just outside the vehicle. Agent Huneycutt identified himself as a law enforcement officer and stated to Defendant what he had observed. Defendant denied that a drug transaction had occurred and told Agent Huneycutt that he had given the unidentified man a cigarette. Agent Huneycutt responded that had Defendant given the man a cigarette, the man would have placed the cigarette "in his mouth, behind his ear, or [would] still ha[ve] it in his hand."

Agent Huneycutt testified he was not satisfied with Defendant's explanation of the activity and, fearing that Defendant had secreted a weapon about his person, Agent Huneycutt performed an investigative pat-down of Defendant. Defendant was wearing baggy jeans and an over-sized shirt. Agent Huneycutt found no weapons, but he felt a lumpy plastic bag in one of Defendant's pockets. Agent Huneycutt testified that he did not manipulate the object, but that "it was immediately apparent that [Defendant] had contraband in his left front pocket." After feeling Defendant's pocket, Agent Huneycutt placed Defendant in handcuffs. Agent Huneycutt testified that he placed Defendant in handcuffs "for officer safety" because of the presence of the other people in Defendant's car.

Agent Huneycutt testified that, after being placed in handcuffs, Defendant "made a spontaneous utterance that he had sold the individual a couple of rocks," and that Defendant had "some stuff in his pocket." Agent Huneycutt then seized a plastic bag containing six rocks of crack cocaine from Defendant's pocket.

At the suppression hearing, the trial court made findings of fact and conclusions of law, concluding that:

1. When Mr. Carrouthers was handcuffed by Agent Huneycutt, he was under arrest since a reasonable person would not have felt free to leave.

2. No probable cause to arrest existed at the time Mr. Carrouthers was arrested by Agent Huneycutt.

3. The arrest of Mr. Carrouthers by Agent Huneycutt was illegal and as such was a violation of his right to be free from unreasonable seizures as guaranteed by the Fourth Amendment of the United States Constitution, the Constitution of North Carolina, Article I, §§19 and 23, and N.C.G.S. 15A-972 *et seq.*

The trial court granted Defendant's motion to suppress in an order entered 25 September 2008. The State appeals.

The State argues in its first assignment of error that the trial court applied the incorrect standard in determining whether Defendant was under arrest. The State asserts the trial court erred in basing its decision on whether a reasonable person would have felt free to leave during the interaction, rather than determining whether there existed special circumstances which would justify Agent Huneycutt's actions, and whether those actions were the least intrusive means of carrying out the purpose of the stop. We agree.

In reviewing an order granting a motion to suppress, we are "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Findings of fact which are not challenged are "deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36, *disc. review denied*, 358 N.C. 240, 594 S.E.2d 199 (2004). " '[T]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found.' " *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (quoting *State v. Golphin*, 352 N.C. 364, 409, 533 S.E.2d 168, 201 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001)).

In the case before us, the trial court's conclusions of law do not reflect "a correct application of applicable legal principles to the facts found." *Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826. The Fourth Amendment to the Constitution of the United States guar-

antees that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV. The Fourteenth Amendment makes this provision applicable to the States. *See State v. Milien*, 144 N.C. App. 335, 339, 548 S.E.2d 768, 771 (2001). Generally, a person can be "seized" in two ways for the purposes of a Fourth Amendment analysis: by arrest or by investigatory stop. *Milien*, 144 N.C. App. at 339, 548 S.E.2d at 771. "[A] formal arrest always requires a showing of 'probable cause.' " *Id.*

By contrast, an officer may detain an individual for an investigatory stop upon a showing that "the officer has reasonable, articulable suspicion that a crime may be underway." *State v. Barnard*, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007), *aff'd*, 362 N.C. 244, 658 S.E.2d 643, *cert. denied*, —— U.S. ——, 172 L. Ed. 2d 198 (2008). If, during an investigatory stop, an officer develops a reasonable suspicion that the suspect may be armed, the officer may pat down the clothing of the suspect to determine whether the suspect is in fact armed. *Terry v. Ohio*, 392 U.S. 1, 30-31, 20 L. Ed. 2d 889, 911 (1968). The characteristics of the investigatory stop, including its length, the methods used, and any search performed, "should be the least intrusive means reasonably available to effectuate the purpose of the stop." *State v. Campbell*, 188 N.C. App. 701, 708, 656 S.E.2d 721, 727 (2008).

However, in performing an investigatory stop, "police officers are 'authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.' " *Id.* at 709, 656 S.E.2d at 727 (quoting *United States v. Hensley*, 469 U.S. 221, 235, 83 L. Ed. 2d 604, 616 (1985)). In order to "maintain the status quo" or to ensure officer safety, officers are permitted to engage in conduct and use "forms of force typically used during [a formal] arrest." *Campbell*, 188 N.C. App. at 709, 656 S.E.2d at 727 (quoting *Longshore v. State*, 399 Md. 486, 509, 924 A.2d 1129, 1142, (2007)). Such permissible conduct may include "placing handcuffs on suspects, placing the suspect in the back of police cruisers, [or] drawing weapons." *Id.*

If the methods used by the police exceed those least intrusive means reasonably required to carry out the stop, the encounter evolves into a *de facto* arrest, creating the need for the police to show probable cause to support the detention. *Milien*, 144 N.C. App. at 340, 548 S.E.2d at 772. Whether a particular action on the part of the police exceeds permissible conduct is determined based on the facts and circumstances of each case.

ALSTON v. FED. EXPRESS CORP.

[200 N.C. App. 420 (2009)]

In the case before us, the trial court applied an incorrect standard to determine whether Defendant was under arrest at the time the contraband was discovered, concluding that, when Defendant "was handcuffed by Agent Huneycutt, he was under arrest since a reasonable person would not have felt free to leave." Instead, the trial court must determine whether special circumstances existed that would have justified Agent Huneycutt's use of handcuffs such that they remained the least intrusive means reasonably necessary to carry out the purpose of the stop. We therefore reverse the trial court's order granting Defendant's motion to suppress.

As a finder of fact, the trial court is in the best position to make the necessary "fact-specific assessments and inquiries." *Buchanan*, 353 N.C. at 342, 543 S.E.2d at 830. We thus remand this matter to the trial court to determine whether there existed special circumstances justifying the handcuffing of Defendant as the least intrusive means reasonably necessary to carry out the purpose of the investigatory stop. In light of our holding, we decline to address the State's remaining argument.

Reversed and remanded.

Judges JACKSON and ERVIN concur.