STATE OF NORTH CAROLINA v. WAYNE CARROUTHERS

No. COA10-1470

(Filed 19 July 2011)

**Search and Seizure— handcuffed defendant—special circumstance—safety-related detainment—stop not arrest—motion to suppress properly denied**

The trial court did not err in a resisting a public officer, sale of cocaine, possession with intent to sell or deliver cocaine, and attaining habitual felon case by denying defendant's motion to suppress evidence obtained after he was placed in handcuffs by a law enforcement officer. The trial court properly concluded that a special circumstance justified handcuffing defendant and, thus, this safety-related detainment did not escalate the *Terry* stop into an arrest.

Appeal by Defendant from judgment entered 4 June 2010 by Judge Yvonne Mims Evans in Mecklenburg County Superior Court. Heard in the Court of Appeals 12 April 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General Marc Bernstein, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Benjamin Dowling-Sendor, for Defendant.*

BEASLEY, Judge.

Wayne Carrouthers (Defendant) appeals from the trial court's order denying his motion to suppress evidence obtained after he was placed in handcuffs by a law enforcement officer in the course of an investigative detention. We affirm.[1]

On 29 October 2007, Defendant was indicted for resisting a public officer, sale of cocaine, possession with intent to sell or deliver cocaine, and attaining habitual felon status, all arising out of his arrest on 14 September 2007.

On 29 August 2008, Defendant moved to suppress evidence obtained by Agent Robert Huneycutt of the North Carolina Alcohol Law Enforcement Agency (ALE). In his motion, Defendant argued that when he was handcuffed during the stop, an illegal seizure occurred and the investigatory detention was converted to an arrest because a reasonable person would not have felt free to leave.[2] On 25 September 2008, the trial court initially agreed and granted Defendant's motion, concluding that Defendant "was under arrest" when he "was handcuffed by Agent Huneycutt" because "a reasonable person would not have felt free to leave."

The State appealed, and on 20 October 2009, this Court reversed the trial court's order due to its application of an incorrect standard in determining whether Defendant was under arrest at the time he was handcuffed. *State v. Carrouthers (Carrouthers I)*, 200 N.C. App. 415, 420, 683 S.E.2d 781, 784-85 (2009). Holding that the trial court was required to resolve "whether there existed special circumstances justifying the handcuffing of Defendant as the least intrusive means reasonably necessary to carry out the purpose of the investigatory stop," we remanded the case for further findings of fact on this question. *Id.* at 420, 683 S.E.2d at 785.

We include below a summary of the evidence discussed in *Carrouthers I* and a recitation of any additional facts relevant to the specific issue before the trial court on remand.

---

1. Defendant's surname is spelled differently in various court documents and orders filed in this matter. Although the case names in the opinions of this Court are to be derived from the last order or judgment of the trial court within the record—the judgment and commitment order in this case—and the subject judgment identifies Defendant as Wayne Carrothers, our previous opinion in this case is captioned *State v. Carrouthers*, 200 N.C. App. 415, 683 S.E.2d 781 (2009), and we maintain the same spelling here for consistency.

2. While Defendant's motion to suppress and the initial order entered thereon are not included in the record on appeal, they constitute the basis for an earlier appeal in this case and are part of the record in COA09-31.

On 14 September 2007, Agent Huneycutt was conducting routine ALE surveillance at an Exxon on the Run convenience store in Charlotte, North Carolina where he had previously made several drug and alcohol arrests. Agent Huneycutt observed a vehicle occupied by three individuals pull into the convenience store lot and park approximately twenty feet away from him. Two females occupied the front seat, and a male later identified as Defendant sat in the back right passenger seat of the car.

Agent Huneycutt then observed an unknown male walk over to the right rear door of the vehicle, kneel down, and hold out his upturned palm towards Defendant. Defendant's arm moved three times as if he were counting something out from his left-front pants pocket and into the hand of the unknown male, who "clasped his fist" and walked away. Based on his law enforcement experience, Agent Huneycutt concluded that he had witnessed a hand-to-hand drug transaction between Defendant and the unknown male and then approached Defendant, who was outside of the vehicle at that point. Agent Huneycutt told Defendant what he had seen, and Defendant denied any wrongdoing, claiming that he merely handed a cigarette to the unknown male. Agent Huneycutt then frisked Defendant, though finding no weapons on Defendant's person, felt a lumpy item in Defendant's left-front pants pocket. Believing the item to be consistent with narcotics, Agent Huneycutt handcuffed Defendant "for officer safety" purposes "[b]ecause there [were] two other individuals in the vehicle." Defendant then admitted "that he had sold the individual a couple of rocks" and "had some stuff in his pocket." Agent Huneycutt recovered six individually packaged rocks of crack cocaine from Defendant's left pocket and placed Defendant under arrest.

On 26 February 2010, the trial court heard arguments of counsel as to the remanded issue. The trial court first entered a form order that same day, finding special circumstances did not exist "to justify the handcuffing of Defendant as the least intrusive means reasonably necessary to carry out the purpose of the investigatory stop" and reinstated the earlier suppression order. The trial court, however, later issued detailed findings of fact and conclusions of law denying Defendant's motion to suppress, thus reversing its earlier decision in a second order entered 1 March 2010.[3] In this superseding order, the

3. Neither party challenges the trial court's reversal of its 26 February order, but we underscore that the judge was indeed entitled to modify her own order where court was still in session. *See State v. Mead*, 184 N.C. App. 306, 310, 646 S.E.2d 597, 600 (2007) ("[D]uring a session of the court a judgment is *in fieri* and the court has authority

STATE v. CARROUTHERS

[213 N.C. App. 384 (2011)]

trial court concluded "Agent Huneycutt had a reasonably articulable suspicion that a crime was underway," justifying the investigatory stop. Additionally, the officer "took steps necessary to protect his personal safety and to maintain the status quo during the stop." The trial court reasoned that special circumstances justified Agent Huneycutt's use of handcuffs in the course thereof, namely, "[t]he presence of two other people with Defendant in the vehicle[.]"

On 4 June 2010, Defendant entered an *Alford* plea to sale of cocaine and possession with intent to sell or deliver cocaine in exchange for the dismissal of resisting an officer and attaining habitual felon status, preserving his right to appeal the denial of his motion to suppress. The trial court sentenced Defendant to consecutive prison terms of 17 to 21 months for sale of cocaine and 7 to 9 months for possession with the intent to sell or deliver cocaine. Defendant gave oral notice of appeal.

In reviewing the trial court's order on a motion to suppress, the scope of this Court's review "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). When "the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36 (2004). However, this Court will review the trial court's conclusions of law *de novo* to verify that its ruling was correct. *State v. Mahaley*, 332 N.C. 583, 592-93, 423 S.E.2d 58, 64 (1992).

Defendant contends the trial court erroneously concluded that "the mere presence of two other people in the car, while [he] was standing outside the car, was a special circumstance that justified handcuffing [Defendant] as the least intrusive means reasonably necessary to carry out a stop to investigate a suspected nonviolent crime."

"[T]he Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth [Amendment]." *Mapp v. Ohio*, 367 U.S. 643, 656, 6 L. Ed. 2d 1081, 1090 (1961); *see also State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 69 (1994) (internal quotation marks and citations omitted)

in its sound discretion, prior to expiration of the session, to modify, amend or set aside the judgment." (internal quotation marks omitted)).

(The Fourth Amendment to the U.S. constitution, made applicable to the states through the Fourteenth Amendment's Due Process Clause, protects "against unreasonable searches and seizures" and "applies to seizures of the person, including brief investigatory detentions[.]"). As noted in *Carrouthers I*, there are generally two ways in which a person can be "seized" for Fourth Amendment purposes: (1) by arrest, which requires a showing of probable cause; or (2) by investigatory detention, which must rest on a reasonable, articulable suspicion of criminal activity. *Carrouthers I*, 200 N.C. App. at 419, 683 S.E.2d at 784 (citations omitted). On remand, the trial court addressed the second scenario, known as the "*Terry* stop," where a law enforcement officer is permitted to "initiate a brief stop and frisk of an individual if there are 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Barnard*, 362 N.C. 244, 249, 658 S.E.2d 643, 646 (2008) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906 (1968)).

Still, a valid initial investigatory stop does not shield the officers' subsequent actions from scrutiny, *see Terry*, 392 U.S. at 19–20, 20 L. Ed. 2d at 905 (holding constitutional validity of further police activity hinges on whether it is "reasonably related in scope" to circumstances justifying interference in the first place); *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."). The seizure may become a *de facto* arrest if an officer exceeds the scope of a permissible investigatory stop, *see State v. Milien*, 144 N.C. App. 335, 340, 548 S.E.2d 768, 772 (2001) ("Where the duration or nature of the intrusion exceeds the permissible scope, a court may determine that the seizure constituted a *de facto* arrest that must be justified by probable cause, even in the absence of a formal arrest." (citing *United States v. Sharpe*, 470 U.S. 675, 682, 84 L. Ed. 2d 605, 615 (1985))). While officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the [investigative] stop[,]" *United States v. Hensley*, 469 U.S. 221, 235, 83 L. Ed. 2d 604, 616 (1985), "[t]he characteristics of the investigatory stop, including its length, the methods used, and any search performed, should be the least intrusive means reasonably available to effectuate the purpose of the stop" in order to keep the detention within permissible bounds and prevent the same from becoming a *de facto* arrest. *Carrouthers I*, 200 N.C. App. at 419, 683 S.E.2d at 784 (internal quotation marks and citation omitted).

To be sure, "[b]rief, even if complete, deprivations of a suspect's liberty do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances." *United States v. Crittendon*, 883 F.2d 326, 329 (4th Cir. 1989). In fact, as this Court noted in *State v. Campbell*, 188 N.C. App. 701, 656 S.E.2d 721 (2008),

> "the permissible scope of a *Terry* stop has expanded in the past few decades, allowing police officers to neutralize dangerous suspects during an investigative detention using measures of force such as placing handcuffs on suspects, placing the suspect in the back of police cruisers, drawing weapons, and other forms of force typically used during an arrest."

*Campbell*, 188 N.C. App. at 709, 656 S.E.2d at 727 (quoting *Longshore v. State*, 924 A.2d 1129, 1142 (Md. 2007)); *see also United States v. Shareef*, 100 F.3d 1491, 1502 (10th Cir. 1996) ("[U]se of firearms, handcuffs, and other forceful techniques does not necessarily transform a *Terry* detention into a full custodial arrest—for which probable cause is required—when the circumstances reasonably warrant such measures." (internal quotation marks and citation omitted)).

In *Campbell*, this Court addressed the use of handcuffs during a *Terry* stop and held that the officers' handcuffing of the defendant was reasonable "to maintain the status quo" of the situation. *Campbell*, 188 N.C. App. at 708, 656 S.E.2d at 727 (internal quotation marks omitted). We cited cases from other jurisdictions for examples of instances during which "handcuffs were permitted in investigative detentions" in those circuits. *See Id.* (citing *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006)). In *Martinez*, the Eighth Circuit held "that use of handcuffs can be a reasonable precaution during a *Terry* stop to protect [officers'] safety and maintain the status quo" and noted the Court's earlier conclusion in *United States v. Miller*, 974 F.2d 953, 957 (8th Cir. 1992), "that cuffing of suspects during [a] *Terry* stop where suspects outnumbered officers and where officers were concerned for safety was reasonably necessary to achieve purposes of *Terry* stop." *Martinez*, 462 F.3d at 907. Another court has observed various "[c]ircumstances in which handcuffing has been determined to be reasonably necessary for the detention," including when:

> (1) the suspect is uncooperative; (2) the officer has information the suspect is currently armed; (3) the officer has information the suspect is about to commit a violent crime; (4) the detention

closely follows a violent crime by a person matching the suspect's description and/or vehicle; (5) the suspect acts in a manner raising a reasonable possibility of danger or flight; or (6) the suspects outnumber the officers.

*People v. Stier*, 85 Cal. Rptr. 3d 77, 82 (Cal. Ct. App. 2008).

Here, based on the totality of the circumstances, Agent Huneycutt's placement of Defendant in handcuffs was likewise reasonable. The trial court's order contains several findings of fact particularly relevant to the question posed on remand, including the following:

> 5. Agent Huneycutt observed a teal Hyundai occupied by three people pull into the gas station and park facing away from the store at gas pumps located in front of and to the right of Agent Huneycutt's car.
>
> . . . .
>
> 12. Agent Huneycutt concluded, based on his training and experience, that what he observed [when Defendant appeared to be placing something into the hand of an unknown individual who was kneeling beside Defendant's passenger door] was a hand-to-hand drug transaction. He got out of his car, called Charlotte-Mecklenburg Police for back-up, and walked toward Mr. Carrouthers to investigate.
>
> 13. Before Agent Huneycutt got out of his car, the unknown individual immediately turned, clenched his fist, and walked away from the teal car.
>
> . . . .
>
> 18. In response to Agent Huneycutt's assertions, Mr. Carrouthers replied that he had given the unknown individual a cigarette.
>
> 19. Because Defendant wore baggy clothes, an oversized shirt and pants of a heavy fabric, Agent Huneycutt feared that he may have been concealing a weapon. He conducted a "Terry frisk" and felt what he believed to be a lumpy plastic bag in Mr. Carrouthers' pocket which was consistent with contraband.
>
> 20. No weapon was found on Mr. Carrouthers, but Agent Huneycutt handcuffed him for officer safety due to the presence of two other people in the Hyundai.

Defendant does not challenge any of the trial court's findings. Thus, there is no dispute that Agent Huneycutt witnessed Defendant engage in a drug transaction or that he subsequently felt an item consistent with narcotics upon frisking Defendant, corroborating his suspicion that Defendant was involved in various drug crimes at the time. These circumstances presented a possible threat of physical violence—despite the fact that no weapon was discovered on Defendant's person during the pat down—as courts have often "encountered . . . links between drugs and violence." *Richards v. Wisconsin,* 520 U.S. 385, 391 & n.2, 137 L. Ed. 2d 615, 622 & n.2 (1997) ("It is indisputable that felony drug investigations may frequently" pose "a threat of physical violence.").

Moreover, it is indisputable that there were two other individuals in the car when Agent Huneycutt approached Defendant; Agent Huneycutt thus believed the situation warranted additional police assistance because he was outnumbered three to one when he placed Defendant in handcuffs. *See Miller,* 974 F.2d at 957 (holding officer's decision to handcuff two of six suspects during an investigatory stop because officers were outnumbered was reasonable); *see also Muehler v. Mena,* 544 U.S. 93, 100, 161 L. Ed. 2d 299, —— (2005) ("[T]he need to detain multiple occupants made the use of handcuffs all the more reasonable."); *Maryland v. Wilson,* 519 U.S. 408, 414, 137 L. Ed. 2d 41, —— (1997) ("[D]anger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car."). Several courts have held that a circumstance in which the suspects outnumber the officers is a factor that weighs in favor of the use of handcuffs during a temporary detention as reasonably necessary. *See, e.g., United States v. Maddox,* 388 F.3d 1356, 1367 (10th Cir. 2004); *Shareef,* 100 F.3d at 1507. Accordingly, it was reasonable for Agent Huneycutt to handcuff Defendant as a permissible safety measure after the frisk gave him further reason to believe a drug crime had just occurred and where he was outnumbered by the suspects, three to one, and backup had not yet arrived.

In light of the circumstances detailed above, the trial court properly concluded that the two individuals in the car constituted a special circumstance that justified handcuffing the Defendant. Thus, this safety-related detainment did not escalate the *Terry* stop into an arrest and we affirm the trial court's denial of Defendant's motion to suppress.

Affirmed.

Judges McGEE and STROUD concur.