IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1127

Filed: 7 July 2020

Guilford County, No. 18 CVS 9846

BRUCE ALLEN BARTLEY, Plaintiff,

v.

CITY OF HIGH POINT and MATT BLACKMAN in his Official Capacity as a Police Officer with the City of High Point, and Individually, Defendants.

Appeal by defendant-Matt Blackman from order entered 21 October 2019 by Judge Eric C. Morgan in Guilford County Superior Court. Heard in the Court of Appeals 13 May 2020.

> *The Deuterman Law Group, by Seth R. Cohen, for plaintiff.*

> *Poyner Spruill LLP, by David L. Woodard and Brett A. Carpenter, for defendant-Matt Blackman.*

ARROWOOD, Judge.

Officer Matt Blackman ("Officer Blackman" or "defendant") appeals from order partially denying defendants' motion for summary judgment as to the claims for malicious prosecution, false imprisonment/arrest, and assault and battery filed against Officer Blackman in his individual capacity. Officer Blackman contends the trial court erred in denying summary judgment based on the defense of public official immunity. He further requests that this Court address the merits of the claims

against him. For the following reasons, we affirm the trial court's order denying defendant's motion for summary judgment based upon the public official immunity defense and decline to reach the merits of the underlying claims.

## I.    Background

On 23 August 2017, Officer Blackman, a police officer with defendant-City of High Point, was driving in an unmarked car when he observed plaintiff pass a slow-moving truck over a double yellow line in violation of N.C. Gen. Stat. § 20-146(a). Officer Blackman believed the truck was not moving so slow as to impede the flow of traffic, and decided to initiate a traffic stop of plaintiff's vehicle. Though Officer Blackman's official job duty is as a detective in the Violent Crimes Unit, he occasionally engages in traffic enforcement as well. As he began to follow after plaintiff's vehicle, Officer Blackman testified that he activated his blue strobe lights and siren. Officer Blackman believed he was soon able to draw near enough to plaintiff such that plaintiff should have reasonably been able to see his blue lights and hear his sirens. However, he was unable to get close enough to plaintiff's vehicle to initiate a traffic stop. He observed plaintiff make a left turn onto a street leading to a residence at a speed which made him become concerned that plaintiff was aware he was behind him and was attempting to make it to the residence. Officer Blackman further testified that, based on his training and experience, it is not uncommon for people to try to get to a driveway and park their vehicle.

Plaintiff pulled into the driveway of a residence and Officer Blackman pulled in behind him. Officer Blackman had deactivated his siren shortly before pulling into the driveway, but left his blue strobe lights on. Plaintiff, who was 60-years old at the time, testified he exited his vehicle and was headed towards the back of it when he first noticed Officer Blackman. Officer Blackman got out of his vehicle and twice ordered plaintiff to get back into his car. Officer Blackman did not identify himself as a police officer or state the reason for his traffic stop, and though his blue strobe lights were reportedly on, he was driving an unmarked car and dressed in plainclothes. In addition, plaintiff testified that Officer Blackman was initially standing behind the front door of his vehicle, which blocked the police badge at his waist from plaintiff's view. Plaintiff, who testified he was unaware Officer Blackman was a police officer and also did not notice the blue strobe lights on Officer Blackman's vehicle, told Officer Blackman that he was on private property and refused to get back into his car. He then proceeded to move towards the back of his car to retrieve his sick cat from the back seat, closer to Officer Blackman.

Following plaintiff's refusal to follow his orders, Officer Blackman used his radio to request that a backup unit be sent to his location because he believed there might be an officer safety issue. Plaintiff testified that as his back was turned, Officer Blackman "body slammed" him against the trunk of his car, handcuffed him, and informed him that he was being detained. Officer Blackman testified that, due to

plaintiff ignoring his commands and the manner in which he approached him, he believed that the safest course of action was to handcuff plaintiff. After plaintiff was handcuffed, he turned and noticed the badge and service weapon on Officer Blackman's belt. Officer Blackman charged plaintiff with resisting, delaying, or obstructing an officer in violation of N.C. Gen. Stat. § 14-233 for ignoring his commands and tensing his arm while being handcuffed. He also charged plaintiff for passing the double yellow line in violation of N.C. Gen. Stat. § 20-146(a). Plaintiff was patted down and detained for 20-25 minutes at his residence. At one point, he asked Officer Blackman to loosen the handcuffs because they were too tight, but Officer Blackman refused. Officer Blackman released plaintiff after he finished conducting the traffic stop and wrote him a citation.

Plaintiff completed driving school and community service and the two charges against him were dropped. On 20 December 2018, plaintiff filed a complaint against the City of High Point and Officer Blackman in both his official and individual capacity, alleging assault and battery, false imprisonment/ false arrest, and malicious prosecution. In his complaint, plaintiff alleged that he was forcibly thrown against the trunk of his car, handcuffed, and charged with resisting an officer. In response, defendants asserted the defenses of governmental and public official immunity. On 19 September 2019, defendants filed a motion for summary judgment. On 21 October 2019, the trial court dismissed plaintiff's claims against the City of High

Point and Officer Blackman in his official capacity on the grounds that sovereign immunity barred those claims. The trial court denied the motion with respect to the claims against Officer Blackman in his individual capacity. On 23 October 2019, Officer Blackman filed a notice of appeal of the trial court's order partially denying his motion.

## II.     Discussion

On appeal, Officer Blackman contends the trial court erred in partially denying his motion for summary judgment on the defense of public official immunity and on the claims against him in his individual capacity. Defendant further requests that this Court address the merits of the claims against him.

Defendant appeals from an interlocutory order, from which "a party [generally] has no right to immediate appellate review[.]" *Tise v. Yates Const. Co., Inc.*, 122 N.C. App. 582, 584, 471 S.E.2d 102, 105 (1996) (citation omitted). However, "this Court has previously held that a public official . . . may immediately appeal from an interlocutory order denying a summary judgment motion based on public official immunity." *Wilcox v. City of Asheville*, 222 N.C. App. 285, 288, 730 S.E.2d 226, 230 (2012) (citing *Free Spirit Aviation, Inc. v. Rutherford Airport Auth.*, 191 N.C. App. 581, 583, 664 S.E.2d 8, 10 (2008)). "Immediate appeal of such interlocutory orders is allowed because 'the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.'" *Thompson v. Town of*

*Dallas*, 142 N.C. App. 651, 653, 543 S.E.2d 901, 903 (2001) (quoting *Epps v. Duke University, Inc.*, 122 N.C. App. 198, 201, 468 S.E.2d 846, 849 (1996)).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2019). The moving party bears the burden of proving that no genuine issue of material fact exists. *Thompson*, 142 N.C. App. at 654, 543 S.E.2d at 904.

"We review a trial court order granting or denying a summary judgment motion on a *de novo* basis, with our examination of the trial court's order focused on determining whether there is a genuine issue of material fact and whether either party is entitled to judgment as a matter of law." *Beeson v. Palombo*, 220 N.C. App. 274, 277, 727 S.E.2d 343, 346-47 (2012) (quoting *Cox v. Roach,* 218 N.C. App. 311, 321, 723 S.E.2d 340, 347 (2012). In doing so, we view the evidence in the light most favorable to the nonmoving party and draw all inferences of fact against the movant and in favor of the nonmovant. *Showalter v. N.C. Dep't of Crime Control & Pub. Safety*, 183 N.C. App. 132, 137, 643 S.E.2d 649, 652 (2007) (citations omitted).

## A.    Public Official Immunity

Officer Blackman contends that, because he was a public official conducting his duty, he is entitled to the protection of public official immunity. "Public official

immunity is 'a derivative form' of governmental immunity, which precludes suits against public officials in their individual capacities[.]" *Wilcox*, 222 N.C. App. at 288, 730 S.E.2d at 230 (internal citation omitted). "Police officers engaged in performing their duties are public officials for the purposes of public official immunity [and] . . . 'enjoy[] absolute immunity from personal liability for discretionary acts done without corruption or malice.' " *Lopp v. Anderson*, 251 N.C. App. 161, 168, 795 S.E.2d 770, 776 (2016) (quoting *Campbell v. Anderson*, 156 N.C. App. 371, 376, 576 S.E.2d 726, 730 (2003)). Thus, a police officer is generally "immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Wilcox*, 222 N.C. App. at 288, 730 S.E.2d at 230 (citing *Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976)).

Here, plaintiff alleges Officer Blackman acted with malice by body slamming him into the trunk of his car and charging and arresting him for resisting an officer without probable cause, and is therefore not entitled to public official immunity. " 'A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.' " *Showalter*, 183 N.C. App. at 136, 643 S.E.2d at 652 (quoting *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984)). Thus, "a malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." *Wilcox*, 222 N.C. App. at 289, 730 S.E.2d at 230.

1. <u>Wantonly and Contrary to Duty</u>

Plaintiff's claims stem from his allegations that Officer Blackman assaulted and battered him when he slammed him against the trunk of his car and handcuffed him, and that Officer Blackman falsely imprisoned or falsely arrested him. We therefore consider whether Officer Blackman acted with malice in the course of arresting plaintiff such that he is not entitled to the defense of public official immunity with respect to plaintiff's claims of assault and battery, false imprisonment/false arrest, and malicious prosecution. We first consider whether Officer Blackman acted wantonly and contrary to his duty. " 'An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others.' " *Brown v. Town of Chapel Hill*, 233 N.C. App. 257, 269, 756 S.E.2d 749, 758 (2014).

It is well established that "a law enforcement officer has the right, in making an arrest and securing control of an offender, to use only such force as may be reasonably necessary to overcome any resistance and properly discharge his duties." *Lopp*, 251 N.C. App. at 172, 795 S.E.2d at 778 (quoting *Myrick v. Cooley*, 91 N.C. App. 209, 215, 371 S.E.2d 492, 496 (1988)). "[H]e may not act maliciously in the wanton abuse of his authority or use unnecessary and excessive force." *Id.* Thus, a police officer may be held liable for assault and battery in the course of an arrest if they used unnecessary or excessive force to effect that arrest.

Here, there is a question of material fact as to whether Officer Blackman used unnecessary and excessive force in the course of detaining plaintiff after plaintiff ignored commands to get back into his car, such that Officer Blackman acted contrary to his duty. While Officer Blackman testified he told plaintiff he was being detained, "took him by the left arm and went to extend his arm and then to put it behind his back," plaintiff testified Officer Blackman approached him from behind without warning and body slammed him against the trunk of his car. Viewing the evidence in the light most favorable to the non-movant, there is also a question of fact as to whether Officer Blackman's alleged conduct was wanton, such that it was done "needlessly, manifesting a reckless indifference to the rights of others." *Brown*, 233 N.C. App. at 269, 756 S.E.2d at 758.

Regarding plaintiff's claim for false imprisonment or false arrest, he alleges that Officer Blackman did not have probable cause to charge or arrest him, and thus acted contrary to his duty. " 'False imprisonment is the illegal restraint of a person against his will. A restraint is illegal if not lawful or consented to. A false arrest is an arrest without legal authority and is one means of committing a false imprisonment.' " *Lopp*, 251 N.C. App. at 173, 795 S.E.2d at 779 (quoting *Marlowe v. Piner*, 119 N.C. App. 125, 129, 458 S.E.2d 220, 223 (1995)).

Here, Officer Blackman did not have a warrant to arrest plaintiff. However, Officer Blackman, citing to our decision in *State v. Carrouthers*, 200 N.C. App. 415,

419, 683 S.E.2d 781, 784 (2009), argues that, during a stop, "in order to 'maintain the status quo' or to ensure officer safety," police are authorized "to engage in conduct and use 'forms of force typically used during [a formal] arrest." This "may include 'placing handcuffs on suspects,'" which "remained the least intrusive means reasonably necessary to carry out the purpose of the stop." *Id.* at 419-20, 683 S.E.2d at 784-85 (quoting *State v. Campbell*, 188 N.C. App. 701, 709, 656 S.E.2d 721, 727 (2008)). Because plaintiff ignored Officer Blackman's commands to get back into his car, Officer Blackman believed the best course of action was to restrain plaintiff by placing him in handcuffs. However, there is a genuine issue of material fact as to whether body slamming plaintiff in the course of arrest was a necessary use of force such that Officer Blackman did not act contrary to, or outside the bounds of, his duty.

In addition, while it is true that "'an officer may make a warrantless arrest for a misdemeanor committed in his or her presence[,]'" he must have probable cause to do so. *Adams v. City of Raleigh*, 245 N.C. App. 330, 336, 782 S.E.2d 108, 113 (2016) (quoting *State v. Brooks*, 337 N.C. 132, 145, 446 S.E.2d 579, 588 (1994)). "'Probable cause is defined as those facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information which are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Id.* at 336-37, 782 S.E.2d at 114 (quoting *State v. Biber*, 365 N.C. 162, 168-69, 712 S.E.2d 874, 879 (2011)). Here, Officer Blackman believed plaintiff violated

N.C. Gen. Stat. § 14-223 by refusing to follow commands to get back into his car. Pursuant to N.C. Gen. Stat. § 14-223, "[i]f any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-223 (2019). This statute essentially has five elements:

1) that the victim was a public officer;

2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer;

3) that the victim was discharging or attempting to discharge a duty of his office;

4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and

5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse.

*State v. Dammons*, 159 N.C. App. 284, 294, 583 S.E.2d 606, 612 (2003).

Here, plaintiff testified he was unaware that the individual standing in his driveway and ordering him to get back into his car was a police officer. Officer Blackman did not identify himself or the reason for his stop, was driving an unmarked car, was dressed in plainclothes, and had turned off his sirens. While Officer Blackman contends he believed plaintiff was aware he was an officer because he thought that plaintiff should have noticed the sirens and blue strobe lights on his vehicle when he was following behind plaintiff and he later used a radio in his

presence, we must view the evidence in the light most favorable to plaintiff. There is thus a material issue as to whether the second and fifth elements of the statute are met; that is, whether it was reasonable for Officer Blackman to believe plaintiff was aware that he was a police officer when plaintiff decided to ignore his commands. If not, Officer Blackman acted wantonly and contrary to his duty when he arrested plaintiff for violating N.C. Gen. Stat. § 14-223.

### 2.    Intent to injure

We lastly consider whether the third element of malice is met—whether Officer Blackman acted with intent to injure. With respect to this element, malice can be proven by a showing of actual or implied intent to injure. To satisfy implied intent, a plaintiff must show that the officer's conduct was " 'so reckless or so manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of wilfulness [sic] and wantonness equivalent in spirit to an actual intent.' " *Hart v. Brienza*, 246 N.C. App. 426, 431, 784 S.E.2d 211, 215-16 (2016) (quoting *Foster v. Hyman*, 197 N.C. 189, 192, 148 S.E. 36, 38 (1929)).

In *Lopp*, we found the defendant police officers were not entitled to summary judgment on the issue of public official immunity where the plaintiff presented evidence they used unnecessary and excessive force during an arrest. 251 N.C. App. at 170, 795 S.E.2d at 777. There, the plaintiff alleged that four officers came to his home and informed him they were going to take his children away and arrest him.

*Id.* The plaintiff insisted that there was an agreement with the children's mother which allowed him to keep the children for a few extra days, and said that he would call his attorney to explain the situation to them. The officers then "took [him] down and assaulted [him]," punching and kicking him before handcuffing him and placing him in the back of a police vehicle. *Id.* The plaintiff further alleged the officers attempted to use a stun gun while placing him in the vehicle. Though there was evidence from other witnesses contradicting the plaintiff's account of the events surrounding his arrest, considering the evidence in the light most favorable to the plaintiff, this Court held that "the record evidence raises an issue of material fact concerning whether Defendant Officers acted with malice." *Id.*

In *Thompson*, an officer placed the plaintiff under arrest for speeding while she was transporting her grandson to the hospital for treatment of a head injury. 142 N.C. App. at 652, 543 S.E.2d at 902-903. The plaintiff alleged that though she did not resist, the officer threatened her with chemical mace, handcuffed her behind her back, and treated her in a "rough and callous manner." *Id.* at 652, 543 S.E.2d at 903. After the plaintiff's son informed the officer that the plaintiff suffered from heart problems and had previously suffered a heart attack, the officer proceeded to take the plaintiff to the magistrates office and charge her with speeding and failing to stop for a blue light. *Id.*

Plaintiff later filed several tort claims against the officer, alleging that she suffered additional heart problems as a result of the officer's conduct. *Id.* The trial court partially denied the officer's motion for summary judgment based on the defense of public official immunity as to the plaintiff's claims for negligence and punitive damages. *Id.* at 653, 543 S.E.2d at 903. This Court noted plaintiff's allegations were "sufficiently egregious, if proved, to support a finding that [the defendant's] conduct was willful, and either intentionally or recklessly indifferent to foreseeable consequences." *Id.* at 657, 543 S.E.2d at 905. Though the defendant denied the plaintiff's allegations, we held the trial court properly denied summary judgment on the matter because there existed a genuine dispute as to whether the defendant acted with malice. *Id.*

Similar to *Lopp* and *Thompson*, in the present case, plaintiff alleges Officer Blackman used unnecessary and excessive force when he arrested plaintiff. Specifically, plaintiff testified in his deposition that Officer Blackman ordered him back into his car while standing in the driveway of his private residence without first identifying himself as a police officer or explaining the reason for his presence. In addition, Officer Blackman was wearing plainclothes, driving an unmarked vehicle, plaintiff did not notice any sirens or strobe lights on the vehicle, and Officer Blackman's police badge was initially hidden from plaintiff's view. Plaintiff was thus unaware that the individual in his driveway was an officer, and decided to ignore his

commands.  Plaintiff further testified that when he walked around the back of his car to retrieve his sick cat from the back seat, Officer Blackman "body slammed" him onto the trunk of his car and handcuffed him.  Officer Blackman testified that though he was alarmed by plaintiff's movement towards him, plaintiff did not verbally or physically threaten him or attempt to run away.  Officer Blackman also observed plaintiff was unarmed.

Though Officer Blackman alleges he believed plaintiff should have reasonably known he was a police officer and contests plaintiff's assertion that he "body slammed" plaintiff, on motion for summary judgment we must view the facts in the light most favorable to plaintiff, as the non-movant.  *Showalter*, 183 N.C. App. at 136, 643 S.E.2d at 652.  Viewing the facts in the light most favorable to plaintiff, Officer Blackman body slammed a 60-year old unarmed man who was not being threatening or attempting to run away.  In keeping with our reasoning in *Thompson*, Officer Blackman's rough use of force in arresting an elderly, non-threatening man in an attempt to cite him for a traffic offense raises a genuine dispute as to whether Officer Blackman acted with malice.  In addition, our holding in *Lopp* concerning the defendant officers' conduct of kicking and punching a non-threatening individual in order to arrest him further lends support to our holding that body slamming an individual against a car may indicate malice.

Officer Blackman contends plaintiff cannot prove malice because this Court held in another case that facts more egregious than those alleged here did not show malice. Specifically, Officer Blackman directs our attention to our holding in *Brown*. There, the plaintiff was walking home when a police officer who mistakenly believed the plaintiff was the subject of several arrest warrants ordered the plaintiff to stop. *Brown*, 233 N.C. App. at 258-59, 756 S.E.2d at 751. When the plaintiff asked why he was being told to stop, the officer grabbed the plaintiff's hand, spun him around, pushed him against the back of a police vehicle, pulled the plaintiff's other arm behind his back, and tightly fastened handcuffs on his wrists. *Id.* at 258, 756 S.E.2d at 751. The officer then pushed the plaintiff against the vehicle a second time and patted him down. *Id.* at 259, 756 S.E.2d at 751. While doing so, the plaintiff alleged the officer tried to "inflict great pain" and made condescending and racist remarks. *Id.* at 269, 756 S.E.2d at 758. After verifying the plaintiff's identity and confirming there were no warrants for his arrest, the officer let the plaintiff go. *Id.* at 270, 756 S.E.2d at 758. This Court held that the officer was entitled to the defense of public official immunity on the claim of false imprisonment because, under those facts, the plaintiff could not establish malice. *Id.* at 271, 756 S.E.2d at 759.

The present case is readily distinguishable from *Brown*. This Court found that it was reasonable for the defendant in *Brown* to arrest the plaintiff because he reasonably believed the plaintiff was a wanted man with several warrants out for his

arrest, even though the defendant later learned he was mistaken. *Id.* at 270, 756 S.E.2d at 758. In addition, the *Brown* plaintiff merely vaguely alleged that the defendant "tried to inflict great pain" on him during the arrest and made disparaging comments. We thus held that "[w]ithout more, [the] plaintiff's bare contention that the handcuffs were painful is not enough to rise to the level of wanton[ness] or show an intent to injure." *Id.* In contrast, plaintiff here was detained on his private property for refusing to follow an unidentified individual's commands for him to get back into his car. The reason for Officer Blackman's stop was not based on suspicion that plaintiff had warrants out for his arrest, like the plaintiff in *Brown*, but rather in order to cite plaintiff for a traffic infraction. Nevertheless, without first identifying himself as a police officer and the reason for his presence, Officer Blackman allegedly slammed plaintiff against his car and handcuffed him tightly. The facts of this case thus differ markedly from those of *Brown*, and are sufficient to raise an issue of genuine fact as to whether Officer Blackman acted with malice.

Defendant is only entitled to review on his claim of public official immunity. Because he has no right to interlocutory review on the other issues he attempts to raise, we decline to consider them. *See Brown*, 233 N.C. App. at 263, 756 S.E.2d at 754 (declining to exercise discretion to address non-immunity issues).

III.   Conclusion

For the foregoing reasons, we affirm the trial court's partial denial of summary judgment.

AFFIRMED.

Judge DIETZ concurs.

Judge TYSON dissents by separate opinion.

No. COA19-1127 – *Bartley v. City of High Point*

TYSON, Judge, dissenting.

I vote to reverse the trial court's partial denial of summary judgment and remand for entry of an order granting Officer Blackman's motion. The majority's opinion erroneously asserts purported genuine issues of material fact exist and affirms the trial court's partial denial of summary judgment on Officer Blackman's claim of public official immunity. The majority's opinion fails to recognize the burden plaintiff carries on this issue and defendant's presumptive entitlement to judgment. I respectfully dissent.

## I. Standard of Review

"The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed." *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 211-12, 580 S.E.2d 732, 735 (2003) (citation omitted), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004).

> A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense.

*Id.* at 212, 580 S.E.2d at 735 (citation and internal quotation marks omitted).

> Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial. To hold otherwise would be to allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment.

*Id.* (citations and internal quotation marks omitted). This Court reviews rulings on motions for summary judgment *de novo. In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

## II. Analysis

The Supreme Court of North Carolina held:

> It is well settled that absent evidence to the contrary, it will always be presumed that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law. This presumption places *a heavy burden* on the party challenging the validity of public officials' actions to overcome this presumption by competent and substantial evidence.

*Leete v. Cty. of Warren*, 341 N.C. 116, 119, 462 S.E.2d 476, 478 (1995) (emphasis supplied) (citations and internal quotation marks omitted). Plaintiff has not carried his "heavy burden" to show any genuine issue of material fact exists "to overcome this presumption." *Id.*

The majority's opinion correctly notes, "a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." *Brown v. Town of Chapel Hill*, 233 N.C. App. 257, 264,

2

756 S.E.2d 749, 754 (2014). The only exception plaintiff asserts to prevent summary judgment for defendant under public official immunity in this case is defendant's actions were done with malice. As applicable here, "a malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." *Id.* at 264, 756 S.E.2d at 755 (citation omitted).

Here, as in *Brown*, "the only issue is whether plaintiff sufficiently forecasted evidence for each element of malice." *Id.* at 265, 756 S.E.2d at 755. To survive Officer Blackman's motion for summary judgment, plaintiff "must have alleged and forecasted evidence demonstrating [Officer Blackman] acted . . . with malice." *Schlossberg v. Goins*, 141 N.C. App. 436, 446, 540 S.E.2d 49, 56 (2000). Plaintiff has failed to forecast "competent and substantial evidence" to show any genuine issue of material fact exists that Officer Blackman acted with malice to invalidate the "public officials' actions to overcome this presumption." *Leete*, 341 N.C. at 119, 462 S.E.2d at 478.

### A. Contrary to Duty

The majority's opinion asserts purportedly genuine questions of fact exist to show Officer Blackman's alleged conduct was contrary to duty. To determine that issue, "we must decide whether plaintiff's seizure constituted an investigatory stop or an arrest." *Brown*, 233 N.C. App. at 265, 756 S.E.2d at 755 (citation omitted). "Generally, a person can be 'seized' in two ways for the purposes of a Fourth

Amendment analysis: by arrest or by investigatory stop." *State v. Carrouthers*, 200

N.C. App. 415, 419, 683 S.E.2d 781, 784 (2009) (citation omitted).

> [A police] officer may detain an individual for an
> investigatory stop upon a showing that the officer has
> reasonable, articulable suspicion that a crime may be
> underway. . . . The characteristics of the investigatory stop,
> including its length, the methods used, and any search
> performed, should be the least intrusive means reasonably
> available to effectuate the purpose of the stop.

*Id.* (citations and internal quotation marks omitted).

This Court has held, "when conducting investigative stops, police officers are

'authorized to take such steps as [are] reasonably necessary to protect their personal

safety and to maintain the status quo during the course of the stop.' " *State v.*

*Campbell*, 188 N.C. App. 701, 708-09, 656 S.E.2d 721, 727 (2008) (quoting *U.S. v.*

*Hensley*, 469 U.S. 221, 235, 83 L. Ed. 2d 604, 616 (1985)).

"A law enforcement officer who has probable cause to believe a person has

committed an infraction may detain the person for a reasonable period in order to

issue and serve him a citation." N.C. Gen. Stat. § 15A-1113 (2019). During an

investigatory stop, "to maintain the status quo or to ensure officer safety, officers are

permitted to engage in conduct and use forms of force typically used during a formal

arrest. Such permissible conduct may include placing handcuffs on suspects, placing

the suspect in the back of police cruisers, or drawing weapons." *Carrouthers*, 200 N.C.

App. at 419, 683 S.E.2d at 784, (citations, alterations, and internal quotation marks

omitted).

4

Here, undisputed evidence shows Officer Blackman handcuffed plaintiff because: (1) plaintiff ignored his commands, creating an "officer safety issue"; (2) Officer Blackman "ha[d] no way of knowing what [plaintiff's] intentions [we]re to [him] or any other aspect of the stop;" and, (3) plaintiff's refusal to comply with his commands to get back into his vehicle constituted probable cause to charge plaintiff with resisting, delaying, or obstructing a public officer.

Plaintiff acknowledges and agrees it is unusual for a driver to get out of his vehicle during an investigatory stop and, after being told to return and re-enter his vehicle, to start walking towards the police officer making the stop. He agrees police officers are rightfully wary of this movement, because it presents a potential danger to the safety of the officer.

Plaintiff further agreed he could not ignore Officer Blackman's directives just because he had continued to drive after Officer Blackman had activated his blue lights and siren and did not stop until after he had entered his driveway. Plaintiff also agreed there was nothing unlawful or inappropriate about a police officer telling him to return to and remain in his car during the course of a traffic stop. Along with the admitted lawful validity of the investigatory stop, these four admissions are sufficient to defeat plaintiff's claims. *Id.*

The majority's opinion purportedly finds a genuine issue of material fact exists of "whether it was reasonable for Officer Blackman to believe plaintiff was aware that

he was a police officer when plaintiff decided to ignore his commands." The majority's opinion asserts: "While Officer Blackman contends he believed plaintiff was aware he was an officer because he thought that plaintiff should have noticed the sirens and blue strobe lights on his vehicle when he was following behind plaintiff and he later used a radio in his presence, we must view the evidence in the light most favorable to plaintiff."

Presuming this is true and viewing the evidence in the light most favorable to the non-moving party, plaintiff has not met his "heavy burden" "to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Leete*, 341 N.C. at 119, 462 S.E.2d at 478; *Draughon*, 158 N.C. App. at 212, 580 S.E.2d at 735.

The majority's opinion also misapplies the standard of review and purports to shift the "heavy burden" plaintiff must carry to Officer Blackman. Our Supreme Court has held whether it was reasonable for Officer Blackman to believe plaintiff was aware he was a police officer must be viewed from Officer Blackman's perspective. *See State v. Biber*, 365 N.C. 162, 168-69, 712 S.E.2d 874, 879 (2011) ("Probable cause is defined as those facts and circumstances *within an officer's knowledge and of which he had reasonably trustworthy information* which are sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." (emphasis supplied)).

6

B. No Forecast or Showing of Malice

An officer "acts with malice when he wantonly does that which a man of *reasonable* intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984) (citation omitted) (emphasis supplied).

The majority's opinion erroneously concludes plaintiff carried his burden to show, with specific facts "as opposed to allegations," a person of reasonable intelligence would believe Officer Blackman behaved maliciously, unreasonably, or contrary to duty. *Draughon*, 158 N.C. App. at 212, 580 S.E.2d at 735. "To hold otherwise would be to allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment." *Id.*

C. Wantonly and Intended to Be Injurious

The majority's opinion also erroneously asserts a genuine issue of material fact exists of whether Officer Blackman's alleged conduct was wanton, such that it was done "needlessly, manifesting a reckless indifference to the rights of others." *Brown*, 233 N.C. App. at 269, 756 S.E.2d at 758.

The majority's opinion invents a purported issue by asserting: "Officer Blackman's rough use of force in arresting an elderly, non-threatening man in an attempt to cite him for a traffic offense raises a genuine dispute as to whether Officer Blackman acted with malice." The majority's opinion accepts plaintiff's mere

7

allegation and self-characterization that Officer Blackman "body slammed" him as a material issue of fact in the light most favorable to him. This characterization erroneously disregards the plaintiff's "heavy burden" and the presumption otherwise, and the distinction between facts forecast and mere allegations.

Plaintiff repeatedly alleges Officer Blackman "body slammed" him, but he has failed to forecast specific facts, "as opposed to allegations" that would establish a *prima facie* showing at trial. *Draughon*, 158 N.C. App. at 212, 580 S.E.2d at 735. Besides his repeated, conclusory allegation and characterization that Officer Blackman "body slammed" him, plaintiff only stated "all of the sudden I was against the trunk lid of my vehicle and he had my hand behind my back and he said you're being obtained[.]" [sic] Plaintiff could not describe how this act was wanton or malicious, except by repeatedly answering: "By his force."

Asked to describe how Officer Blackman "got [him] into that position," plaintiff answered, "I don't know what procedure he used other than coming behind me and putting me on the trunk lid of my car. My back is turned. How am I going to know that?"

The only injury or harm plaintiff alleged he suffered was redness on his wrists, which he ascribed to the handcuffs being secured "way too tight." Plaintiff specifically alleged no harm or injury whatsoever from the alleged "body slam." Plaintiff received

8

no medical treatment for the redness on his wrists and could not remember whether it was apparent the following day.

Even when plaintiff's allegations are viewed in the light most favorable to him, he has not shown any specific facts to establish his allegation that Officer Blackman "body slammed" him to overcome his "heavy burden" to prove Officer Blackman's actions were malicious, wanton, or were done with any intent to injure him.

Plaintiff has failed to allege any facts to forecast Officer Blackman's conduct was wanton or done with a reckless indifference to plaintiff's rights, when compared to what any reasonable police officer would have done in Officer Blackman's position, given plaintiff's admitted conduct. *See Brown*, 233 N.C. App. at 270, 756 S.E.2d at 758.

Plaintiff's conclusory allegation that Officer Blackman "body slammed" him by a "rough use of force" does not create a genuine issue of material fact. Officer Blackman is entitled to summary judgment as plaintiff's forecast of evidence failed to carry his "heavy burden" to show he acted maliciously, in order to overcome Officer Blackman's presumption and entitlement to public officer immunity. *See Leete*, 341 N.C. at 119, 462 S.E.2d at 478; *Schlossberg*, 141 N.C. App. at 446, 540 S.E.2d at 56.

### III. Conclusion

Plaintiff has failed to forecast any evidence demonstrating specific facts, as opposed to mere unsupported allegations, showing a *prima facie* case for trial. *See*

*Draughon*, 158 N.C. App. at 212, 580 S.E.2d at 735. Plaintiff also failed to forecast evidence for each element of malice, wantonness, or breach of duty, and did not carry his "heavy burden" to survive Officer Blackman's motion for summary judgment on the issue of his individual liability under public official immunity. *See Schlossberg*, 141 N.C. App. at 446, 540 S.E.2d at 56.

No genuine issues of material fact exist in the pleadings, depositions, and affidavits served and entered in this matter to overcome defendant's motions and to deny summary judgment. The trial court's ruling is properly reversed and remanded for entry of summary judgment for Officer Blackman. I respectfully dissent.